## A. C. JACKSON *v.* MORRIS SHAWL.

INTEREST TO BE CHARGED BY PAWNBROKERS.—The Act of 1861, prohibiting pawnbrokers or pledgees from charging more than four per cent per month on loans made on property pledged as security, is not in violation of Section 2 of Article I of the Constitution, which provides that "all laws of a general nature shall have a uniform operation."

ENFORCEMENT OF CONTRACT WITH PAWNBROKER. — Where a pawnbroker loans money upon property pledged, and the borrower contracts to pay him more than four per cent interest per month, he can recover possession of the property by tendering him the principal and four per cent per month interest.

SAME.—*Query?*—Could the borrower in such case recover the property by making a tender of the principal sum without interest?

CONTRACT GOOD IN PART AND BAD IN PART.—If a contract is bad in part, for being in violation of law, but good in part, and the good part of the contract can be separated from the bad, that which is good can be enforced in law.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The defendant appealed from the judgment.
The other facts are stated in the opinion of the Court.

*Porter & Holladay,* for Appellant.

On the face of the complaint it is manifest that the plaintiff has not fulfilled his part of the contract. He agreed to pay interest at seven per cent, while he seeks to evade his own engagement by invoking the protection of the statute concerning pawnbrokers.

By the general law of this State to regulate the interest of money, passed March 13th, 1850, "parties may agree in writing for the payment of any rate of interest whatever on money due or to become due on any contract." Thus the law stood down to 1861, when the Act concerning pawnbrokers was passed. This Act does not provide, nor does it anywhere

appear in the statute, that the contract is void, but only the lender renders himself liable to the forfeiture mentioned, in a separate suit to be brought for that purpose. So that admitting the validity of the Pawnbroker Act, it does not affect the validity of the contract, but leaves that to stand as valid, if the party loaning chooses to take the risk of incurring the penalty—forfeit three times the value of the article pledged —which forfeiture is to be recovered in a civil action brought for that express purpose.

This law is in derogation of the general law on the subject of interest. It applies only to a certain class, and being severely penal in its character, must be construed strictly. We maintain that the contract set out in the complaint is in itself legal and valid; that a pawnbroker who will venture the risk of the penalty, in case a civil action is brought by the pledger for that purpose, can make a contract for a rate of interest exceeding four per cent, which may be enforced in the Courts according to its terms.

The Act in question is in contravention of Section 11 of Article I of the Constitution of this State, which provides that " all laws of a *general nature* shall have a uniform operation." This law purports to regulate the rate of interest. It is in substance a usury law. It is in its nature a general law, and yet by its terms it is limited to a small number of persons. The law of 1850, regulating the rate of interest, is unquestionably a law of a general nature, applying alike to all persons in the State. But suppose in one of its sections it had provided that certain five persons by name should not " contract for any rate of interest whatever," but that as to them the rate of interest should be limited to one per cent, could such invidious discrimination be maintained or enforced against those few? Does it alter the case if the few who are thus onerously excepted are designated by a certain trade or occupation, instead of naming them as individuals? Is the principle changed by putting the invidious discrimination against the excepted few in a statute by itself, instead of putting them in a separate section of the general law?

*James C. Cary*, for Respondent.

The Act in question is not in contravention of Article I, Section 11 of the Constitution, which declares that all laws of a general nature shall have a uniform operation. This is a general law, and it is uniform in its operation. The word "uniform" does not mean *universal*. The Constitution is violated only when a privilege extended to one is denied to another, on substantially the same facts. The law does not deny to John Doe any privilege which it accords to Richard Roe. It tells John, and Richard, and every one else, "If you desire to pursue a certain business, which, left to itself, may be fraught with oppression to the necessitous, you must submit to certain regulations." It forbids every one doing certain things when surrounded by a certain circle of facts. This is the true definition of constitutional "uniformity," and the present case is within the construction. (*Smith* v. *Judge of the Twelfth District*, 17 Cal. 554, 555, *et seq.; Ex parte Andrews*, 18 Cal. 681, 682, *et seq.; Ex parte Newman*, 9 Cal. 528.)

The proposition advanced by the counsel for the appellant, "that the contract, as set out in the complaint, is in itself legal and valid; that a pawnbroker who will venture the risk of the penalty in case a civil action is brought by the pledger for that purpose, can make a contract for a rate of interest exceeding four per cent, which may be enforced in the Courts according to its terms," is as alarming as it is novel. The clause which forbids expressly the pawnbroker the right to make such a contract might have been left out of the law, and still the penal clause would have furnished the Judge a sufficient guide in declaring the contract void, and the plaintiff vested with a right to the immediate possession of his property. (*Sharp* v. *Teese*, 4 Halst. 352; *Craig* v. *State of Missouri*, 4 Peters, 410; *Bartle* v. *Coleman*, Id. 184.)

By the Court, CURREY, J.

This is an action of replevin in the *detinet* for a gold watch, two diamond rings and two diamond pins, the property of the plaintiff, of. the value of nine hundred and fifty dollars. On the 21st of August, 1864, the defendant loaned to plaintiff five hundred dollars, in consideration of which the latter promised to pay the former one month thereafter said sum with interest thereon at the rate of seven per cent per month; and to secure the payment of the principal and interest, the plaintiff delivered to the defendant, who was a pawnbroker, the property above mentioned, in pledge. On the 4th of the following September the plaintiff tendered to the defendant five hundred and twenty dollars for the payment of the sum borrowed and the interest thereon for one month at the rate of four per cent per month, and thereupon demanded the property pledged. The defendant refused to comply with the demand. Hence this action.

To the complaint setting forth the facts, the defendant demurred on the grounds: First—Because by the complaint, it appears the plaintiff contracted to pay seven per cent interest per month on the sum borrowed, while the alleged tender was at the rate of only four per cent per month. Second— Because the Act entitled "An Act to define the duties and liabilities of pawnbrokers and pledgees," passed April 17th, 1861, is in violation of section eleven of Article I of the Constitution, and therefore void. The demurrer was overruled with leave to the defendant to answer, which he declined to do, and in due time judgment by default, and also final judgment was entered against him.

*Rate of interest pawnbrokers may charge.*

The second and third sections of the Act, to which the defendant refers in his demurrer, are as follows:

"SEC. 2. The rate of interest or percentage which shall be lawfully charged by any pawnbroker or pledgee shall not

exceed four per cent per month in advance on all loans exceeding twenty dollars, which shall include all charges for discount, commissions, storage, brokerage, wasting and all and every charge or charges thereupon; nor shall said interest at any time be compounded.

" SEC. 3.   Any pawnbroker or pledgee who shall directly or indirectly charge or receive any interest greater than four per cent per month, or by charging commissions, discount, brokerage, storage, wastage or other charge, or shall attempt to increase said interest, or shall compound said interest, shall forfeit three times the value of the article pledged or to be pledged, to be recovered by the owner or pledger in a civil action, which may be brought by the party aggrieved."

The constitutional objection which is made to this Act of the Legislature has been settled adversely to the views of the defendant by the cases of *Smith* v. *The Judge of the Twelfth Judicial District*, 17 Cal. 554 ; *Ex parte Andrews*, 18 Cal. 680; and *French* v. *Teschemacher*, 24 Cal. 544, and it is only necessary to say we are satisfied with the general doctrine of those cases respecting the clause of the Constitution in question, and therefore hold the objection made to the statute to be invalid.

*An unlawful contract will not be enforced.*

It is a well settled principle of the common law that no Court of justice will lend its aid to enforce the performance of any contract or agreement which was intended to contravene the provisions of a positive law (*Pratt* v. *Adams*, 7 Paige, 653 ;) and it may be stated, as a general rule, that no contract founded on or growing out of an unlawful Act can be enforced, whether it be *malum in se* or *malum prohibitum*. (*Bank of the United States* v. *Owens*, 2 Peters, 538, 539 ; *DeGroot* v. *Van Duzer*, 20 Wend. 390 ; *Leavitt* v. *Palmer*, 3 Coms. 19.) The statute referred to and in part quoted, in effect provides that a pawnbroker shall not charge a greater rate of interest on loans exceeding twenty dollars than four per cent a month in advance.   The contract between the parties, as it appears

by the complaint, shows that the defendant, who, in the character of a pawnbroker, made the loan to the plaintiff, charged him interest at the rate of seven per cent per month. The charge thus made was in contravention of the provisions of the statute, and to the extent at least of the three per cent in excess of the measure prescribed, the plaintiff's agreement could not be enforced in any mode provided by law. Now, whether the defendant had any legal claim for any sum as interest when the five hundred dollars became due, it is not necessary to decide. The plaintiff's promise was to repay to the defendant the sum borrowed in one month, and also to pay him seven per cent per month on the principal sum for its use. Here the contract between the parties was legal as to the principal sum, but illegal as to the interest. The two things were not inseparable. "When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction, for the common law doth divide according to common reason; and having made that void that is against law, lets the rest stand. The general and more liberal principle now is, that when any matter, void even by statute, be mixed up with good matter, which is entirely independent of it, the good part shall stand and the rest be held void." (2 Kent's Com. 467, and cases cited; *DeGroot* v. *Van Duzer*, 20 Wend. 412; *Leavitt* v. *Palmer*, 3 Coms. 37; 1 Parsons' Cont. 380.)

*A penalty for an act is a prohibition of the act.*

The defendant's counsel maintains in argument that the contract between the parties was valid and binding to the full extent of its terms, and that the only remedy, if any, which the plaintiff has, because of the violation of the law, is an action to recover the penalty mentioned in the third section of the Act. Parsons, in his work on contracts, says it has been held in England that where a statute provided a penalty for an act, without prohibiting the act in express terms, there the penalty was the only legal consequence of a violation of the law, and a contract which implied or required such violation

was nevertheless valid. But Lord Holt denied the doctrine, and Sir James Mansfield established a better rule of law, holding that where a statute provides a penalty for an act, this is a prohibition of the act. We apprehend that this has always been the prevailing, if not the uncontradicted rule of law, on this subject in this country. (1 Parsons on Cont. 382, and cases cited, 4th Ed.)

The plaintiff tendered to the defendant all that was due him by the law of the land, and was thereupon entitled to the possession of the property deposited in pledge. We are of the opinion the judgment should be affirmed.

Judgment affirmed.

SHAFTER, J., concurring specially.

I concur in the judgment.