[S. F. No. 3947.　Department Two.—January 7, 1907.]

## LOUIS O. LEVINSON, as Receiver, Appellant, v. J. BOAS, Respondent.

PAWNBROKERS—DEFINITION.—To constitute a person a pawnbroker he must receive goods in pledge for loans of money at interest, and this must be his business, or a well-defined part thereof, as contradistinguished from a single transaction or occasional loans upon pledge.

ID.—NATURE AND LIMITS OF BUSINESS.—Although a pawnbroker limits his business, as such, to pledges of jewels and jewelry only, and, at the same time and place, conducts the business of a money-lender and requires the pledgor or pawnor of jewelry to execute a note or chattel mortgage upon jewelry transferred to his possession as security for loans of money thereon at interest, such facts do not render his business of receiving goods in pledge for such loans any the less that of a pawnbroker.

ID.—PLEDGE DISTINGUISHED FROM MORTGAGE.—Every contract by which the possession of personal property is transferred as security only is deemed a pledge; and the very fact that the pawnbroker took possession of the property as a pledge, and relied upon it as such, negatives the conception of a chattel mortgage.

ID.—BUSINESS A SUBJECT OF POLICE REGULATION.—The business of a pawnbroker has always been the subject of police regulation for the benefit of the public, and it is unlawful if not conducted under the provisions, restrictions, and requirements of the law.

ID.—STATUTES FOR PROTECTION OF PUBLIC—VIOLATION—VOID CONTRACT.—Wherever a statute is made for the protection of the public a contract in violation of its provisions is void.

ID.—VIOLATION OF PENAL LAWS REGULATING PAWNBROKERS—VOID PLEDGE—RECOVERY BY PLEDGOR.—Where a pawnbroker has violated

a city and county ordinance requiring a special license, and the provisions of the Penal Code on that subject, and also its penal provisions requiring him to make a complete registry of each transaction, and to deliver a written copy thereof to the pledgor, and forbidding loans on pledges in excess of ten per cent per annum, a contract of pledge in violation of such penal provisions is void, and the right of the pledgee to hold the property is lost, and the possession thereof may be recovered by the pledgor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

M. B. Kellogg, Francis J. Heney, and C. A. S. Frost, for Appellant.

Lucius L. Solomons, for Respondent.

HENSHAW, J.—Plaintiff is the receiver of the insolvent copartnership of Schumacher & Co. While the firm of Schumacher & Co. was transacting its business as diamond and jewelry merchant one of the members of the firm, on behalf of the firm, at various times borrowed money from the defendant, pledging with him, as security for the loans, diamonds, and other jewels and articles of jewelry. After his appointment the receiver made demand upon defendant for a restoration and return of the pledges upon the ground that defendant was, and was acting as, a pawnbroker, and that because of his violations of the laws of the state and of the municipality of San Francisco in the conduct of his business as pawnbroker, the contracts were void. He therefore insisted that the pledges should be returned, and that defendant should be relegated to the position of a general creditor. Upon the refusal of defendant to accede to this demand, the receiver, with permission, brought suit. The suit was submitted for decision upon an agreed statement of facts, judgment passed for defendant, and the receiver appeals.

There being no controversy over the facts, the questions to be resolved are two. First, under the facts, was defendant a pawnbroker? Second, if a pawnbroker, did his unquestioned failure to comply with the statutes of the state and the ordi-

nances of San Francisco concerning pawnbrokers render void his contracts with Schumacher & Co.?

The word "pawnbroker" has been variously defined as "Any person whose business or occupation it is to take or receive, by way of pledge, pawn, or exchange, any goods, wares, or merchandise, or any kind of personal property whatever, as security for the payment of money loaned thereon." (Anderson's Law Dictionary, p. 759.) "One who makes a business of loaning money for interest, and receives personal property in security for the payment of the same." (English Law Dictionary, p. 607.) Or, again: "A pawn is a pledge to a pawnbroker, or person who keeps a shop for the purchase or sale of goods, and takes goods by way of security for money advanced thereon." (2 Raplaje & Lawrence's Dictionary, p. 940.) Our Penal Code (sec. 338) declares that "Every person who carries on the business of pawnbroker, by receiving goods in pledge for loans at any rate of interest above the rate of ten per cent per annum, except by authority of a license, is guilty of a misdemeanor." Under our law, therefore, one is a pawnbroker who carries on the business of receiving goods in pledge for loans, exacting an interest for those loans. If the rate of interest which he exacts exceeds ten per cent per annum, he is guilty of a misdemeanor if he conducts his business without first procuring a license so to do. Analyzing these definitions for the better understanding of the facts of this case which are to follow, it becomes apparent that, to constitute a person a pawnbroker, two requisites must be established. First, the person must receive goods in pledge for loans at a rate of interest, and, second, this must be his business, or a well-defined part of his business. A single transaction, or an occasional loan, would not establish that a person "carried on the business of pawnbroker." The stipulated facts as to defendant Boas may be summarized as follows: For more than thirty years last past he has maintained an office in the city and county of San Francisco for the transaction of business as a money-lender, and during all of said time was generally known to the public to be engaged in the business of lending money at his said office, upon mortgages on real estate, upon mortgages upon personal property, and upon assignments of life-insurance policies, and upon assignments of public warrants, and upon unsecured

notes from merchants reputed to be solvent; *"And as a part of his regular business was likewise generally known to the public to be there receiving jewelry and diamonds in pledge for loans, but not to be receiving any other class of goods, wares, or merchandise in pledge for loans."* He paid a municipal license as a money-broker, and the sign above his place of business was either that of "Broker" or that of "Money-Broker," the sign being changed at various times. The respondent, neither at the time of the making of the loans, nor at any time, had a license to carry on or conduct the business of pawnbroker. The interest charged upon the loans exceeded ten per cent per annum. In making the loans the defendant relied solely upon the diamonds and jewelry so pledged with him as security for his debt, giving no weight or consideration whatever to the responsibility or non-responsibility of the copartnership firm of Schumacher & Co., or of either of its partners. Nor did he at the time of making the loans deliver to the partnership, or to any person on its behalf, a written copy of any entry made by him, or by any person in his behalf, in a register kept by him for that purpose, in the English, or in any other language, showing the date, duration, amount, or rate of interest of such loan, or showing an accurate description of the property so pledged, or showing the name or residence of the pledgor, as required by sections 338 and 339 of the Penal Code, and by certain municipal ordinances of the city and county of San Francisco. During all of this time the ordinances of the city and county of San Francisco required every keeper of a pawnbroker's shop or office to pay a license of thirty-one dollars per quarter, and required that every person engaged in the business of pawnbroker should keep a book in which should be entered at the time, in the English language, a true and accurate description of every article purchased by them, the name and residence of the vendor, the amount paid, the date and hour of purchase, and that such book should be exhibited upon request of any police officer of the permanent police force of the city. A violation of the terms of these ordinances was declared a misdemeanor, punishable by fine or imprisonment, or both. The city and county of San Francisco is given power to license and regulate pawnbrokers and to enact regulations to protect the public in dealing with them, to fix the

amount of the license and to impose fines, penalties, and for-
feitures for the violation of such ordinances. (Pol. Code,
sec. 4408, subds. 7, 8, 14, 15; Municipal Corporation Act,
sec. 64, subd. 16; Stats. 1903, p. 666; Charter of the City
and County of San Francisco, art. 2, chap. II, sec. 1, subds. 1,
16, art. 8, chap. IV, sec. 7.)

Under this state of the law and of the facts, was defendant
a pawnbroker? Unhesitatingly it is answered that he was.
He loaned money upon personal property pledged or pawned
with him. He loaned this money upon the security of the
pledge and pawn. He charged and collected upon these loans
a high rate of interest, exceeding ten per cent per annum.
He did all of these things continuously, and as a part of his
regular business, at a fixed place of business, and the doing
of these things—the carrying on of this business—was pub-
licly known. That he limited his operations to certain classes
of goods—namely, jewels and jewelry—does not militate
against this conclusion. No one would hesitate to say that
one who, as a regular business, received in pledge or pawn
second-hand clothing, loaning money upon it at usurious rates
of interest, was a pawnbroker. Yet the kinds of jewels, and,
still more, the kinds of manufactured products known as
jewelry, are vastly greater than the kinds of second-hand
garments. So that the mere limiting of a dealer's sphere
of operations to one or another of a particular class of goods
is not at all the test of the character of his business.

Nor was his business any less that of a pawnbroker because
at the same time and at the same place he conducted another
business, or branches of his business, which were not of this
character. A question identical in principle arose in *City of
Los Angeles* v. *Loan etc. Co.*, 109 Cal. 396, [42 Pac. 149],
where the defendant incorporated to do a trust and safe-
deposit business and general banking business, had a savings
department in which term savings deposits were received, and
insisted that it was not taxable as a savings and loan corpora-
tion upon its term deposits. The trial court held that the
deposits in question should not be assessed or treated as the
property of the bank, but should be taxed with the safe
deposits as ordinary commercial deposits. But this court held
that the fact that the loan company was engaged in a general
banking business, and a safe deposit business, in addition to

that of receiving savings deposits, did not exempt it from taxation as a savings bank upon its savings deposits. After setting forth that the corporation was conducting different kinds of business, it declared: "Our conclusion is . . . that as to the part of its business in controversy, it was *de facto* a savings corporation, and that the taxes in question were properly levied and assessed." When the making of such contracts of pledge or pawn becomes, in whole or in substance, part of the business of a man, his trade, his occupation, his means of obtaining a livelihood, or of making or adding to his fortune, he becomes a pawnbroker within the meaning of the law.

Nor was respondent the less a pawnbroker because he required the pledgor or pawnor to execute a promissory note or chattel mortgage in connection with the transaction. First, because it is admitted that reliance was placed upon the pledge, and, second, because the transactions, no matter what force the respondent may have thought attached to his notes and chattel mortgages, were, under our law, pledges, and nothing else. "Every contract by which the possession of personal property is transferred, as security only, is to be deemed a pledge." (Civ. Code, sec. 2987.) "Every transfer of an interest in property . . . made only as security for the performance of another act, is to be deemed a mortgage, except when, in the case of personal property, it is accompanied by actual change of possession, in which case it is to be deemed a pledge." (Civ. Code, sec. 2924.) The very fact that the respondent took possession of the property as a pledge, and relied upon his possession as a pledge, negatives the conception of a chattel mortgage. This precise question arose in Minnesota, and the same contention was made. It was disposed of by the supreme court of that state as follows: "We are also of the opinion that the evidence justified the trial court in finding that the defendant was conducting the business of pawnbroker. The evidence does not consist wholly, as counsel claims, of the two loans. There was evidence of admission of defendant, or her admitted general agent, that those loans were but samples of the kind of business which she was conducting, and that she was in the habit of lending money on watches, stocks, time-checks, or any other kind of security, but that she thought she was not required to

obtain a license because she issued no tickets, but took notes and chattel mortgages from the borrowers. In the instance referred to it was admitted that the articles taken as security were deposited with her, and the transactions were none the less a loan of money on pawn or pledge, because she took a chattel mortgage on the article deposited." (*City of St. Paul* v. *Lytle,* 69 Minn. 1, [71 N. W. 703].)

It being thus established that defendant was a pawnbroker, and it being admitted that in the conduct of his business he neither procured the license required by law, nor observed the regulations prescribed by the statutes of the state and by municipal ordinance for the conduct of the business of pawnbroker, there is presented the second question: What legal consequences followed this dereliction in the matter of these contracts of pledge? And first, as having to do with the question, it is to be noted that the business of a pawnbroker is one which has always been regarded as subject to police regulation for the benefit of the public, and to prevent frauds upon it. Thus, touching a pawnbroker act, the court of common pleas of England said: "It is quite evident that the statute was passed not only for the purpose of protecting the numerous parties who borrow money on small pledges, but also the public, against frauds committed on third persons, the real owners of goods, by pledging their property without their consent." (*Ferguson* v. *Norman,* 5 Bing. N. C. 76.) "The business [pawnbroker], therefore, comes expressly within the control of the police power of the state, and is properly subject to reasonable rules and regulations." (*Grand Rapids* v. *Braudy,* 105 Mich. 670, [55 Am. St. Rep. 472, 64 N. W. 29].) And says the supreme court of Missouri: "The city may not only regulate, but suppress, pawnbrokers, or refuse to license such occupation altogether. No person has the right to follow such occupation within the limits of said city without first obtaining a license from its authorities for that purpose, which may be granted or withheld at pleasure. The business is a privilege, not a right, and he who avails himself of it and derives its benefits must bear its burdens and conform to the laws in force regulating the occupation." (*St. Joseph* v. *Levin,* 128 Mo. 588, [49 Am. St. Rep. 577, 31 S. W. 101]. See, also, *Ex parte Lichtenstein,* 67 Cal. 359, [56 Am. Rep. 713, 7 Pac. 728].)

In the consideration which is to follow, therefore, it is to be borne in mind that we are not dealing with a harmless and legitimate business requiring no regulation, and which, if licensed at all, could be licensed only for purposes of revenue. We are dealing with a business which is, and always has been, subject to police regulation, and which is unlawful if not conducted under the provisions, restrictions, and requirements of the law. The present case presents, then, the question of a statute drafted in the plain exercise of the police power, requiring the doing of certain things, and imposing a penalty for their non-performance. Is a contract made without observance of the terms of such statute valid or void? It is of course undisputed that a contract in violation of a statute is void, and no difficulty can arise in such a case. More trouble has been experienced by the courts where the case has been one in which there has been no express prohibition of the act, but where a penalty for the performance or non-performance has been imposed. A statute may either expressly command, prohibit, or enjoin an act, or it may impliedly command, prohibit, or enjoin it by fixing a penalty for the non-performance or commission thereof. As to the effect of such implied prohibitions there was much divergence of opinion upon the part of the English judges, and this difference of view found its way into conflicting and irreconcilable decisions of the courts of our different states. Thus in *Brown* v. *Duncan*, 10 B. & C. 93, the action was on a guaranty for sales of liquor, which had been distilled without a license under a statute requiring a license and affixing a penalty. It was held that these were mere revenue regulations, and that a breach did not render the trade so illegal as to prevent a recovery for sales. This case was distinguished from the case of *Law* v. *Hodgson*, 2 Camp. N. P. 147, which was an action for the value of bricks of dimensions smaller than that required by statute, which statute affixed a penalty for violation. The statute declared merely that bricks shall be made of such dimensions. Lord Ellenborough said: "The first section of this statute absolutely forbids such bricks to be made for sale. Therefore, the plaintiff, in making the bricks in question, was guilty of an absolute breach of the law; and he shall not be permitted to maintain an action for their value." The distinction declared in *Brown* .v. *Duncan* was that the

statute in *Law* v. *Hodgson* was designed to protect the public; while that in the case before them was a mere revenue regulation. The influence of these and other like decisions, appealing, as they have, with differing force to the judges of our state courts, has led to much confusion of decision; a confusion, however, which the learned decision of the supreme court of the United States in *Harris* v. *Runnells,* 53 U. S. 79, should do much to eliminate. But it is to be noticed that every case from every court recognizes that when a statute has been made for the protection of the public, a contract in violation of its provisions is void. (*Woods* v. *Armstrong,* 54 Ala. 150, [25 Am. Rep. 671]; *Griffith* v. *Wells,* 3 Denio, 226; *Cope* v. *Rowlands,* 2 Mees. & W. Rep. 149; *United States Bank* v. *Owen,* 27 U. S. 526; *Burck* v. *Taylor,* 152 U. S. 634, [14 Sup. Ct. 693]; *Miller* v. *Ammon,* 145 U. S. 421, [12 Sup. Ct. 884]; *Berka* v. *Woodward,* 125 Cal. 119, [73 Am. St. Rep. 71, 57 Pac. 777]; *Jackson* v. *Shaw,* 29 Cal. 267; *Johnson* v. *Simonton,* 43 Cal. 242.)

As has been pointed out, sections 338 and 339 of our Penal Code make every person carrying on the business of a pawnbroker, except by the authority of a license, guilty of misdemeanor; also every person carrying on such business, if he fails at the time of the transaction to enter in a register kept by him for that purpose, in the English language, the date, duration, amount, and rate of interest of every loan made by him, an accurate description of the property pledged, and the name and residence of the pledgor, and to deliver to the pledgor a written copy of such entry, and to keep an account in writing of all sales made by him. It has also been shown that these provisions are, one and all, enacted under the police power for the regulation of the business and the protection of the needy and improvident and of the general public against oppression and fraud. It has further been shown that where a statute, designed for the protection of the public, prescribes a penalty, that penalty is the equivalent of an express prohibition, and that a contract in violation of its provisions is void. "Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case." (*Coppell* v. *Hall,* 74 U. S. 542; *Berka* v. *Woodward,* 125 Cal. 119, [73 Am. St. Rep. 31, 57 Pac. 777].) Where the contract is void, the right of the pledgee

to hold the property, which right depends upon a valid contract, is of course lost. (*Hilgert* v. *Levin,* 72 Mo. App. 48.) It follows in this case, therefore, that these contracts are void, that the lien is lost, and that the judgment should be for plaintiff, unless, as respondent contends, the contracts in this case are severable, as in *Jackson* v. *Shawl,* 29 Cal. 267. *Jackson* v. *Shawl* held that where a pawnbroker had loaned money upon property pledged, and the borrower had contracted to pay him more than four per cent interest per month, the borrower could recover possession of the property by tendering the principal and four per cent per month interest, four per cent being the maximum charge permitted to pawnbrokers. The act did not provide that the contract was void, but only that the lender rendered himself liable to a forfeiture of the excess, in a separate suit to be brought for that purpose. It is to be noticed that the illegality of the contract in *Jackson* v. *Shawl* went only to the excess of interest charged, and this court applied the general and liberal principle fully recognized by the law, that when any matter, void even by statute, be joined with good matter which is entirely independent of it, the good part shall stand and the rest be held void. But in the case at bar the illegality and the prohibition go to the whole substance of the contract. It is a prohibition of the law from entering into such a contract at all, and the illegality affects the whole transaction from its inception. It is in this respect identical with the pawnbroker case of *Ferguson* v. *Norman,* 5 Bing. N. C. 76. In that case a tailor had become bankrupt, but, prior to his bankruptcy, had pawned certain goods with the defendant pawnbroker. The English law required the insertion in the books of the pawnbroker of the name of the pledgor and of his residence, with street, place, or square, and whether or not the pledgor was housekeeper or lodger, and required the pawnbroker to make these entries before advancing money. The pawnbroker inserted as pledgor the name of Reeves instead of Bullock, the tailor, gave his residence as Pimlico instead of Haymarket, failed to enter any street, place, or square as his place of residence, and, though Bullock was a housekeeper, entered him in many cases as a lodger. The court said: "A distinction may easily be drawn as to those duties imposed on the pawnbroker which are entirely collateral to the individual contract; and it would be too much to say,

because he had not observed the enactment of the statute in such matters, that therefore the contract made by him should be void. Suppose an instance in which his name was required to be put up over the door, and some mistake had been made. A penalty is given for not putting up the name; but it would not follow that contracts entered into by an individual whose name had been incorrectly spelled, would be therefore void. However, when we look at the present section, the case is extremely simple. . . . This, therefore, being the object and intention of the legislature, and the requisites being such as are to be performed at the time of, and previously to, entering into the contract, I think the contract must be held to be void, notwithstanding there are specific penalties for the omission of such requisites. . . . And it comes around to this, that, if the contract be void, the lien is void also, and I see no ground on which the right of the pawnbroker to resist this action can be set up.''

For the foregoing reasons the judgment is reversed, with instructions to the court to enter judgment for plaintiff as prayed for.

McFarland, J., and Lorigan, J., concurred.