TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-206 |
| of | : | |
| | : | September 29, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

WILLIAM DEWITT has requested this office to grant leave to sue in quo warranto upon the following question:

Does the doctrine of incompatible public offices preclude a person from holding simultaneously the positions of South Gate City Treasurer and Central Basin Municipal Water District Director?

CONCLUSION

The holding simultaneously of the positions of South Gate City Treasurer and Central Basin Municipal Water District Director presents substantial questions of fact and law concerning the application of incompatible public offices doctrine that warrants the granting of leave to sue in quo warranto.

PARTIES

WILLIAM DEWITT ("relator") contends that ALBERT T. ROBLES ("defendant") is unlawfully serving as a member of the board of directors ("Director") of the Central Basin Municipal Water District ("District") as a result of his assumption of the office of Treasurer ("City Treasurer") for the City of South Gate ("City").

MATERIAL FACTS

In November 1996, defendant was elected to, qualified for, assumed, and now continues to occupy and execute the duties of a Director of the District for a term of four years. The District is a public corporation organized under the Municipal Water District Law of 1911, and is situated within the County of Los Angeles.

In March 1997, defendant was elected to, qualified for, assumed, and now continues to occupy and execute the duties of City Treasurer for a term of four years. The City is a general law municipal

corporation situated entirely within the District.

ANALYSIS

In deciding whether to grant leave to sue in the name of the People of the State of California, we consider initially whether there exists a substantial question of law or fact that requires judicial resolution, and if so, whether the filing of an action in the nature of quo warranto would serve the overall public interest. (79 Ops.Cal.Atty.Gen. 243, 244 (1996).) Here we conclude that leave to sue in quo warranto should be granted.

The common law doctrine of incompatible public offices precludes a person from holding simultaneously two offices if the performance of the duties of either office could have an adverse effect on the other. (80 Ops.Cal.Atty.Gen. 74, 75 (1997).) In 66 Ops.Cal.Atty.Gen. 176, 177-178 (1983), we summarized the applicable precepts as follows:

"`Offices are incompatible, in the absence of statutes suggesting a contrary result, if there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power over the other.' [Citations.]

"The policy set forth in *People* ex rel. *Chapman* v. *Rapsey* [(1940) 16 Cal.2d 636] comprehends prospective as well as present clashes of duties and loyalties. [Citation.]

"`Neither is it pertinent to say that the conflict in duties may never arise; it is enough to say that it may, in the regular operation of the statutory plan.' [Citation.]

"`Only one significant clash of duties and loyalties is required to make offices incompatible. . . .' [Citation.] Furthermore, `[t]he existence of devices to avoid. . .[conflicts] neither changes the nature of the potential conflicts nor provides assurance that they would be employed. . . .' [Citation.] Accordingly, the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine. A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible. [Citation.] Both positions, however, must be offices. If one or both of the positions is a mere employment as opposed to a public office, the doctrine does not apply." [Citation.]

Does the incompatible offices doctrine apply to a Director of the District, who subsequently assumes the position of City Treasurer? It must be found initially that both of the positions in question are public offices.

We have previously examined the elements of a public office (80 Ops.Cal.Atty.Gen., *supra*, at 75-76), and applied them in various situations (*Id.*, at pp. 76-77; 78 Ops.Cal.Atty.Gen. 362, 364-365 (1995); 74 Ops.Cal.Atty.Gen. 82, 83 (1991); cf. *Dibb* v. *County of San Diego* (1994) 8 Cal.4th 1200, 1212). A city treasurer holds a public office. (See Gov. Code, § 36501; 36 Ops.Cal.Atty.Gen. 252 (1960); 22 Ops.Cal.Atty.Gen. 83 (1953).)

We entertain no doubt that a member of the board of directors of a municipal water district (Wat. Code, § 71000 et seq.) **Footnote No. 1** also holds a public office. (See 76 Ops.Cal.Atty.Gen. 81, 83 (1993) ["special act" water district director holds an office; irrigation district director holds an office]; 75 Ops.Cal.Atty.Gen. 10, 13 (1992) [California water district director holds an office]; 73 Ops.Cal.Atty.Gen. 268, 270 (1990) [county water district director holds an office]; 73 Ops.Cal.Atty.Gen. 183, 185 (1990) [community services water agency director holds an office]; 55 Ops.Cal.Atty.Gen. 36, 37-38 (1972) [water conservation district director holds an office].)

As to whether the two offices in question are incompatible, in 76 Ops.Cal.Atty.Gen., *supra*, 85, we concluded that the powers of respective water agencies to enter into contracts involving matters of mutual concern (see §§ 71592, 71663, 71722), including the sale and purchase of water (see §§ 71611, 71612), to sue and be sued in the case of conflicting interests (see § 71750), and to exercise the right of eminent domain (see §§ 71693, 71694), presented substantial questions of law warranting a judicial resolution. (See also 75 Ops.Cal.Atty.Gen., *supra*, 13-14; 73 Ops.Cal.Atty.Gen., *supra*, 188; 37 Ops.Cal.Atty.Gen. 21, 22 (1961); compare 80 Ops.Cal.Atty.Gen., *supra*, 77-78.)

In 73 Ops.Cal.Atty.Gen., *supra*, 271, we concluded that the authority of a water district to restrict the use of water during an emergency (see § 71640), and to contract with other public agencies, such as a school district, concerning the control, distribution, and treatment of water, the construction of public works, the acquisition of property, and the joint operation of any property or public works (see §§ 71690, 71691, 71722), presented substantial questions of law with respect to whether two public offices were incompatible.

We have determined that the power of water service agencies to fix and collect charges for water and services (see §§ 71614, 71616) to a city (75 Ops.Cal.Atty.Gen., *supra*, 14) and to a school district (73 Ops.Cal.Atty.Gen., *supra*, 186) presented substantial questions of law as to the application of the incompatible offices doctrine. In the latter opinion we stated in part:

> "[D]efendant . . . is responsible for the fixing of rates for all users, including school districts, for prescribing different rates for different uses, and for assigning users into appropriate rate categories. In this regard, the exercise of his judgment and discretion as to the best interest of [the water agency] as a provider of services, and as to those of the [school district] as a ratepayer, is necessarily divided." (*Ibid.*)

Here, it is apparent that defendant in one capacity is responsible for the fixing of water rates, and in another capacity for the payment of the City's obligations, including water charges imposed by the District. Will his consideration of a possible rate increase as a District Director be influenced by his possible resulting need, as City Treasurer, to sell investment securities prematurely at a discount in order to meet the increased obligation, or the need to show greater investment returns, or the need to maintain sufficient available funds for a higher level of City investments?

In 80 Ops.Cal.Atty.Gen. 186 (1997), we concluded that a water agency may adopt a service fee structure providing a lower water rate for its public agency customers. If such a request by the City is made of the District, will defendant disregard any concern he might have respecting the fiscal integrity of the City and vote objectively as a District Director to deny the request, or will he disregard any such concern for the best interests of the District and vote objectively to grant the City's request?

If an action is brought against him as the City Treasurer by the District for the collection and enforcement of disputed charges, shall he act as both the plaintiff and the defendant? (See *People* ex rel. *Deputy Sheriffs' Assn.* v. *County of Santa Clara* (1996) 49 Cal.App.4th 1471, 1484.) It is argued, however, that the duties of defendant as City Treasurer are ministerial in nature, that he is not authorized to disburse the City's funds except on warrants signed by legally designated persons (Gov. Code § 41003), and that he may not refuse to disburse funds on warrants which have been audited and approved (*City of Redondo Beach* v. *DeLong* (1981) 123 Cal.App.3d 1035, 1042). In *DeLong*, the court examined a city charter that delineated and limited the duties of the city treasurer, i.e., to "Disburse monies on demands properly audited and approved in the manner provided for in this Charter or by ordinance. . . ." (*Id.*, at p. 1042.) The court held that once the prescribed procedure had been followed, the duty of the city treasurer to disburse the funds was mandatory and not discretionary. (*Ibid.*) Even under such a charter provision, however, the court expressly recognized that ". . . the city treasurer may advise the responsible officers if she suspects some problem and they may take remedial action where warranted. . . ." (*Ibid.*)

In the case of a general law city, we granted leave to sue in quo warranto where the offices were city treasurer and city administrator. In 22 Ops.Cal.Atty.Gen., *supra*, 87, we stated in part:

"One of the primary functions of the treasurer is to receive and safely keep city funds and to be sure that such funds are paid out of the city treasury only in strict accordance with the requirements of the law. It is proper for him to refuse payment of a warrant even though signed by the proper officers if he feels the expenditure is an illegal one (*Hodges* v. *Kauffman*, 95 Cal.App. 598, 600-601; *Berka* v. *Woodward*, 125 Cal. 119)."

In *Hodges*, it was held that the refusal of a city treasurer to pay certain claims was lawful, where the action of the city board of trustees in ordering payment of the claims was void. The court stated:

". . . While as a general rule no discretion is vested in its treasurer with respect to the payment of a warrant therefor drawn by the proper officers [citations]; nevertheless if the claim is not a legal charge against the municipality, *mandamus* will not lie to compel its payment, even though it has been audited and allowed by the board charged with that duty [citations]." (*Hodges* v. *Kauffman* (1928) 95 Cal.App. 598, 600-601.)

In *Berka*, mandamus was brought against the city treasurer to honor warrants issued by the city council in favor of a council member who, pursuant to a contract with the city, delivered lumber and materials. The court stated:

"The fact that the claim was allowed by the council does not give to it a validity which it otherwise did not possess. [Citation.] The duty of the treasurer is to pay only legal demands against his funds. The law will not imply a promise to pay for services illegally rendered under a contract expressly prohibited by law. [Citation.]" (*Berka* v. *Woodward* (1899) 125 Cal. 119, 129.)

Hence, it is clear that defendant herein may be on both sides of an action for collection of disputed charges. The foregoing considerations present substantial questions of law.

Further, the District may issue negotiable promissory notes and revenue bonds. (§§ 71810, 71853.) Will the decision of the City Treasurer to invest the City's funds in the District's notes and bonds (Gov. Code, §§ 53601, 53607) be influenced by his loyalty to the District? It is argued, however, that the City has a policy that "Idle cash management and investment transactions are the responsibility of the Director of Finance," effectively divesting the City Treasurer of any such investment responsibility. However, it is also the City's policy that: "The Director of Finance when acting as Deputy City Treasurer shall maintain a close rapport with the City Treasurer *for the purpose of investing City funds* and shall maintain a close relation with other departments having a significant impact on cash flow." (Italics added.) Moreover, Government Code section 53607 provides for the legislative body of a local agency to delegate its investment authority to the treasurer of the local agency; it does not provide for such delegation to any other officer or employee of the agency. The scope and effect of the City's investment policy thus present substantial questions of fact and law.

PUBLIC INTEREST

As a general rule, we have viewed the existence of a substantial question of fact or law as presenting a sufficient "public purpose" to warrant the granting of leave to sue. (73 Ops.Cal.Atty.Gen., *supra*, 188.) Accordingly, leave will be denied only in the presence of other overriding considerations. (73 Ops.Cal.Atty.Gen. 354, 355 (1990).) We find no countervailing considerations herein. Rather, the public, the District, and the City each has an interest in the undivided loyalty of its public officers. (76 Ops.Cal.Atty.Gen., *supra*, 86.) The application for leave to sue in quo warranto is granted.

* * * * *

---

**Footnote No. 1**
Undesignated section references herein are to the Water Code. **Return to text**

---


**Return to the 1997 Published Opinion Page**
**Return to the Opinion Unit's Home Page**
**Return to the Attorney General's Home Page**