FELIPE RAMIRES, Respondent, *v.* KENT, BARTELL & CO., Appellants.

An alien cannot be deprived of his land, or of any rights incident to its owner-ship, by proof of his alienage in a collateral proceeding.

The estate purchased by an alien does not vest in the sovereign till " office found ;" until then the alien *is* seized, and may sustain actions for injuries to the property.

The relation of landlord and tenant exists where the landord is an alien non-resident, and is obligatory upon the tenant, and he cannot be allowed to con-trovert the title of the lessor.

APPEAL from the Fourth Judicial District of Yuba County.

The plaintiff brought this action for the recovery of rent due upon a lease, dated Sept. 12, 1852, from plaintiff to defendants, of certain property in Yuba county therein described, reserving rent as therein set forth, which defendants covenanted to pay, &c., and who entered into, and took possession of the premises, &c., and refused payment of the said rent.

The defendants' answer admits the lease as set forth, but avers that they were induced to sign the same by the misrepresentations of the plaintiff, that he was seized in fee of the premises, &c. Whereas in fact he was not so seized, but the said land was, at the date of the said lease, and still is, part of the public lands of the United States, and the said plaintiff, at the date of the said lease, was, and still is, a non-resident foreigner, and as such could not and cannot enjoy or demise, and let the said land, and denies all obligation on said agreement and lease.

The evidence was, that the plaintiff was a native of Chili, had been resident at San Francisco, from 1849 to June, 1851, and while there had purchased the real estate, out of which this ac-tion grew ; that he returned to Chili in June, 1851, but declared his intention to return with his family, and make his home here. The lease was made by his agent in his absence.

The cause was tried by a jury, who found for the plaintiff $400 ; and judgment was entered accordingly, from which defendants appealed to this Court.

*Kent, Bartell & Co.,* for Appellants.

By the Constitution, art. 1, sec. 17, "Foreigners, who are or may hereafter become *bona fide* residents of this State, shall enjoy the same rights in respect to the possession, enjoyment and inheritance of property, as native-born citizens;" this leaves the right of *non-resident* foreigners in respect to real property, to be determined by the common law. At common law a foreigner cannot take such property by operation of law. 2 Kent, 54; 3 Johns. Cases, 109. But he can take by purchase and hold till office found, and his title will be good against every person but the State. On his death his estate escheats at once. 2 Kent, 54, 61. He cannot bar the right of forfeiture by a conveyance. 2 Kent, 61. He cannot lease. Bac. Abr. title Aliens, 6, p. 204. And this doctrine, that a foreigner cannot lease, it was contended, is in force in this State, and if so, the lease is void; and if void, it will not deprive the plaintiff of his action of ejectment, for his *title* is good till office found. Non-resident landlords are an evil to any country, where they are suffered, and ought not to be tolerated.

*McAllister,* for respondent.

There is no statute prohibiting a foreigner from holding real estate by purchase or devise. The constitutional prohibition denies to foreigners the *same rights* as those of native-born citizens, but this does not exclude them from *all* rights whatever. On the contrary, it follows that if they are not to have the *same,* they are nevertheless entitled to *some* rights. What these are must be determined by the principles of the common law; and by these an alien may take real estate, and his title is good against all persons but the State. 1 Wheat. 355; 3 Wheat. 589; 9 Mass. 256; 13 Pick. 523; 6 Kent's R. 261.

The doctrine of Coke, that an alien owner of real estate cannot lease, denied; 2 Kent, 61; feudal principles have been exploded by the established maxims of sound policy. Ib. 62.

The facts of the case exhibit a residence on the part of the plaintiff, which brings him within the very language of the Constitution. 4 Eng. C. L. Rep. 462; Wall. Jr. C. C. Rep. 220. 231. 235; 1 Brad. Sur. Rep. 87. He acquired his title while a resident; to deprive him of it because he had temporarily left the country, would nullify the Constitution.

A tenant cannot dispute the title of his landlord. Platt on Leases, 59; 1 Esp. Rep. 90. He cannot set up that the grant under which his landlord derived his title, is *void*. 1 Stark. Rep. 305; 3 Pick. 224; 1 Wash. Rep. 344; U. S. Dig. 206, No. 186; Ib. 1847, p. 224, No. 30 and 37; 2 Greenleaf's Evid. sec. 305, No. 2; 7 Wheat. 547-8.

HEYDENFELDT, Justice, delivered the opinion of the Court.

This was an action for rent falling due upon a lease. The defence is set up that the lessor was a non-resident foreigner, and the lease therefore void.

At the common law, a foreigner might purchase, but could not hold real estate. But after stating this principle, the question arises, how was he to be divested so as to forfeit the lands to the crown. There was but one method, and that by inquest of office. This was a proceeding by which it was found, that he was an alien and held the land, &c. To hold land, (being an alien,) was a species of offence, and the proceeding for the forfeiture was quasi criminal.

But I have seen no case in which it was held that an alien could be deprived of land, or of any rights incident to its ownership by proof of his alienage in a collateral proceeding. If the sovereign does not enforce his prerogative, it is no cause for the subject to complain.

Coke says, that the estate purchased by an alien does not vest in the sovereign till "office found;" until which the alien is seised, and may sustain actions for injuries to the property. But it is insisted, that although the alien may hold until office found, yet he cannot make a lease. This principle is asserted by the old writers in the same manner that they assert that "he cannot hold," meaning in both instances that his rights are determined, and the land absolutely forfeited upon inquest of office.

Besides, in the case of a tenant, the policy of the law will not permit him to contest the title of his landlord.

In Blight's Lessee et al. *v.* Rochester, 7 Wheaton, 535, Chief Justice Marshall says : "This principle originates in the relation between lessor and lessee, and so far as respects them is well established, and ought to be maintained. The title of lessee is in fact the title of lessor. He comes in by virtue of it to maintain

and justify his possession.   He professes to have no independent right in himself, and it is a part of the very essence of the contract under which he claims, that the paramount ownership of the lessor shall be acknowledged during the continuance of the lease, and that possession shall be surrendered at its expiration. He cannot be allowed to controvert the title of the lessor without disparaging his own; and he cannot set up the title of another without violating that contract by which he obtained and holds possession; and breaking that faith that he has pledged."

I have quoted this sentence of the opinion in full, because it is a clear, well written, and full exposition of the true doctrine of the common law.   Testing the defence in the case before us, by the principles laid down, it can have no standing in Court, and the judgment below must be affirmed with costs.

Murray, Chief Justice.   I concur.