RUTH ALES, Appellant, v. HARRY EPSTEIN.

Division Two, June 25, 1920.

1. **ALIEN: Right to Sue for Real Estate.** Under the statute (Sec. 750, R. S. 1909) declaring that "it shall be unlawful for any person or persons not citizens of the United States, or who have not lawfully declared their intention to become citizens . . . to hereafter acquire, hold or own real estate, or any interest therein, in this State, except such as may be acquired by inheritance," such a person cannot maintain a suit to have the title to real estate vested in her, or to have a constructive trust therein declared in her favor.

2. ——: ——: **Court of Equity.** It being unlawful, as declared by the statute, for an alien to acquire, hold or own real estate, it would be equally unlawful for a court of equity to aid her in violating said law.

3. ——: ——: **Suit By State.** If the alien has received a deed to real estate, conveying to her the absolute title to same, then it might be well said that the State alone could attack the conveyance, declare a forfeiture and take the property on the ground that the grantee is an alien; but the situation is wholly different where the alien has received no conveyance and applies to a court of equity to divest the title out of defendants and vest it in her.

Appeal from Jasper Circuit Court.—*Hon. R. A. Pearson,* Judge.

AFFIRMED.

*John J. Wolfe* and *W. J. Owen* for appellant.

The fact that plaintiff is and was, at the time of acquiring an interest in the property in controversy by becoming the purchaser at a public sale, an alien, is not available to defendants as a matter of defense in this suit.   Pembroke v. Huston, 180 Mo. 627; Omnium Inv. Co. v. Trust Co., 65 Kan. 50, 68 Pac. 1089; Gray v. Kaufman, 82 Tex. 65, 17 S. W. 513; Otiz DeBenevides, 61 Tex. 60; Williams v. Bennett, 1 Tex. Civ. App. 498, 20 S. W. 856; Bradstreet v. Oneida County, 13 Wend. (N. Y.) 546; Heiler v. Goodman Motor Co., 3 A. L. R. 336.

*Haywood Scott* for respondents.

(1) A resulting trust cannot be enforced by an alien in opposition to statutes forbidding or circumscribing her right to hold property.   Bispham's Principles of Equity, sec. 82, p. 130, note 5; Perry on Trusts, sec. 131; Zundell v. Gess, 73 Tex. 144.   (2) Appellant could not maintain this suit because she is an alien, being a citizen, with her husband, of Russia, with whom we have no treaty on the subject.   Sec. 750, R. S. 1909; Case v. Kelley, 133 U. S. 21; State ex rel. v. Superior Court, 74 Pac. 686.   (3) There never was any treaty between the United States and Russia, authorizing a Russian to hold real estate in this country.   The only provision concerning the holding of land in this country by a citizen of Russia, in any treaty, was that such citizen could take by inheritance and could then hold the land inherited only during the time that it was necessary to sell it.   Treaty of 1832, p. 1514; 2 Molloy, Treaties, art. 3.   (4) This treaty was terminated in 1913.   3 Charles, Treaties, p. 98.   (5) At common law there is no difference between alien friends and enemies in respect to their rights to purchase and hold real estate.   Yeo v. Mercereau, 18 N. J. L. 387.

RAILEY, C.—This is a proceeding in equity, and was commenced in the Circuit Court of Jasper County, Missouri, at Carthage, on January 17, 1918. The cause was transferred to the circuit court of said county at Joplin, and tried there. The petition alleges that in December, 1917, the legal title to Lot 6 in Moffet's Subdivision, an addition to Joplin, Jasper County, Missouri, was vested in the heirs of Mahala J. Chamberlain, deceased, namely, Albert Hennel, Nellie Elliott, Beulah Hennel, Anna G. Thompson, Mabel Hennel and Kate Hennel, as tenants in common; that at the November Term, 1917, of the Carthage Circuit Court, there was pending therein, a partition suit between said Albert M. Hennel, as plaintiff, and the other tenants in common, supra, as defendants, in which a decree was rendered providing for the sale of the above lot, at public vendue, by L. C. Wormington, special commissioner; that said commissioner advertised said property for sale at the Carthage Court House on December 20, 1917; that for a long time prior to said last named date, plaintiff herein had been in possession of said real estate as tenant; that said property was reasonably worth $4,525, and more; that plaintiff and defendant Harry Epstein had been personal friends for a long time, and she often went to him for counsel and advice in matters pertaining to her business ventures; that, relying on said defendant's superior ability, and sagacity, and relying upon his honesty and fair dealing with plaintiff, she requested him to go with her to attend said sale, to act in her behalf, and to assist her, in purchasing said property; that plaintiff agreed to pay him, in addition to his expenses, a reasonable sum for his said services; that defendant agreed to act for her and perform the services aforesaid; that they were both present at the above advertised sale; that plaintiff bid for said property $4,525, it being the highest bid, and which said sum she was willing, ready and able to pay therefor; that said commissioner declared said property had been sold

to plaintiff for the above sum; *that the undertaking and agreements aforesaid were by parol.*

It is further alleged that said Epstein, in violation of said undertaking and agreement, wrongfully and fraudently, for the purpose of cheating and defrauding plaintiff, in order that he might become the owner of said property, represented that it was to her interest that the deed from the commissioner for said real estate should be made, and delivered, to said Epstein; that he promised, without delay, to convey the same to this plaintiff; that, relying upon said defendant, as heretofore stated, she consented to above conveyance being made to him; that, thereafter, said defendant, in violation of his said agreement, for the purpose of cheating and defrauding her, conspired and confederated with the defenants Benjamin Raymond and David Raymond, whereby they procured said deed to be made to said Epstein and said Raymonds; that at all times since said sale, she has been ready, able and willing to take the title to said property in accordance with said agreement made with said Epstein and to pay said $4,525, with the reasonable expenses and charges of said defendant, etc., and tenders the same into court.

Appellant is here, asking a court of equity to declare, that defendants hold the property in trust for plaintiff; that the court ascertain the amount of all moneys, if any, expended by said Epstein; to determine the interest thereon from date of said sale; to fix reasonable compensation to said Epstein, for his said services, and that said defendants be divested of the title to said property, and the same be vested in plaintiff.

Defendants' answer contains, first, a general denial; second, it alleges that the agreements alleged to have been made in petition were not in writing, and are contrary to the Statute of Frauds; third, that plaintiff released in writing whatever claim she may have had to said property mentioned in the petition; fourth, that the petition states no cause of action upon which plaintiff can recover in equity against defendants or either

of them; fifth, it charges that plaintiff and husband are aliens and, as such, have no right to maintain this action.

Plaintiff moved to strike out the fifth ground above stated, and her motion was overruled. She then filed a reply denying the allegations of said answer.

We will consider the evidence and rulings of the court in the opinion to follow.

On May 18, 1918, the court found the issues against plaintiff, dismissed her bill, and judgment was entered accordingly. A motion for a new trial was filed by plaintiff, which was overruled, and the cause duly appealed by her to this court.

Appellant, in her first assignment of error, contends that the trial court erred in refusing to sustain her motion to strike out the fifth paragraph of defendant's answer, which reads as follows:

Aliens.

"That plaintiff and husband are aliens and subjects of the Kingdom of Russia and not citizens of the United States, and have not lawfully declared their intention of becoming such, and under the law cannot hold real estate, and cannot maintain this suit for said lot, even though she might otherwise have some interest therein."

In passing upon said motion, the allegations of paragraph five, supra, must be taken as true. Section 750, Revised Statutes 1909, among other things, contains the following provisions:

"It shall be unlawful for any person or persons not citizens of the United States, or who have not lawfully declared their intention to become such citizens, . . . to hereafter acquire, hold or own real estate so hereafter acquired, or any interest therein, in this State, except such as may be acquired by inheritance."

Appellant is here, asking a court of equity to declare in her favor, a constructive trust, and to vest the title to the real estate aforesaid in her, regardless of the plain provisions of above statute.

If the plaintiff had received a deed to the real estate in controversy, conveying to her the absolute title to same, and these defendants were seeking to divest her of said title, on the ground, that she is an alien and could not hold the real estate, then it might be well said, that the State alone could attack the conveyance, declare a forfeiture and take the property. If it was unlawful, as declared by above statute, for plaintiff, under the circumstances of this case, to take and hold the real estate aforesaid, it would be equally as unlawful for a court of equity to aid her in violating said law. We are therefore, of the opinion, that said paragraph five of defendants' answer constitutes a valid defense in this cause, and that the trial court committed no error in overruling appellant's motion to strike out same. [Fishing and Hunting Club v. Kessler, 252 Mo. l. c. 436; Davis v. Realty Co., 241 Mo. l. c. 259-60; Garrett v. Kansas City Coal Mining Co., 113 Mo. l. c. 339; Pacific Railroad Co. v. Seely, 45 Mo. 212; Case v. Kelly, 133 U. S. l. c. 28; United States v. Mo. Pac. Ry. Co., 152 U. S. 300; Baker v. Schofield, 243 U. S. 120; Barnes v. Multnomah County, 145 Fed. l. c. 700; South & North Ala. Railroad Co. v. Highland Ave. & Belt Railroad Co., 119 Ala. 105; 4 Clark & Marshall on Private Corporations, sec. 230, p. 3254; 3 Thompson on Corporations (2 Ed.), sec. 2393.]

In Case v. Kelley, 133 U. S. l. c. 28, Mr. Justice MILLER, in discussing the subject before us, said:

"It is next objected to the principle adopted by the court that the limitation upon the power of the corporation to receive land is one which concerns the State alone, and the title to such lands in a corporation can only be defeated by a proceeding in the nature of a *quo warranto* on behalf of the State. The case of National Bank v. Matthews, 98 U. S. 621, is strenuously relied on to support this view. We need not stop here to inquire whether this company can hold title to lands, which it is impliedly forbidden to do by its charter, because the case before us is not one in which the title to the lands in question has ever been vested in the railroad company,

or attempted to be so vested. The railroad company is here is, not whether the courts would deprive it of such plaintiff in this action, and is seeking to obtain the title to such lands. It has no authority by the statute to receive such title and to own such lands, and the question lands if they had been conveyed to it, but whether they will aid it to violate the law and obtain a title which it has no power to hold. We think the questions are very different ones, and that while a court might hesitate to declare the title to lands received already, and in the possession and ownership of the company, void on the principle that they had no authority to take such lands, it is very clear that it will not make itself the active agent in behalf of the company in violating the law and enabling the company to do that which the law forbids.''

The same principle is clearly stated in 1 Ruling Case Law, sec. 32, pages 822-3, as follows:

''In the absence of statutory prohibition against an alien holding real estate it follows, as in the case of a direct grant or purchase, that a use or trust in real estate for the benefit of an alien is valid until inquest and office found; but equity will never raise a resulting trust in fraud of the laws of the land, and therefore where an alien purchases land and takes an absolute conveyance in the name of a citizen, without any agreement or declaration of a trust, the law will not raise a trust in favor of the alien purchaser, who cannot hold the land, any more than it would cast it by descent upon an alien heir, who cannot hold it against the State. The result in such a case must be, either that the nominal grantee takes the land, discharged of any trust by mere implication of law, or that there is a resulting trust in behalf of the people of the State, which they alone can enforce against the grantee in the deed.''

The other authorities cited, including the latest utterance of this court in Fishing & Hunting Club v. Kessler, 252 Mo. l. c. 436, are to the same effect.

The most causal reading of the case of Pembroke v. Huston, 180 Mo. 627, relied on by appellant, will disclose its inapplicability to the case at bar. In the above case, plaintiff sought to rescind a land contract which had been fully performed on each side, on the ground that he was an alien and had no right to hold the land which he traded, etc. Judge VALLIANT concluded the opinion in said cause, at page 642, as follows: "The plaintiff was not entitled to a rescission of the contract on any theory presented by him."

The above case is clearly distinguished from the one at bar, by the Supreme Court of the United States, in Baker v. Schofield, 243 U. S. 120.

The trial court was within the law, in refusing to strike out of defendant's answer paragraph five, supra. Turning to plaintiff's own testimony, we find, that she and her husband have lived in the United States more than four years; that they are citizens of Russia; that they have never been admitted as citizens of the United States, nor have they ever declared their intention of becoming citizens of this country, etc. We are, therefore, of the opinion, that under the law and facts of this case, the trial court committed no error in dismissing plaintiff's bill.

The judgment below is accordingly affirmed. *White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.