[Civ. No. 2322. Third Appellate District.—August 31, 1921.]

## C. SUWA, Respondent, v. J. W. JOHNSON, Appellant.

[1] ALIEN LAND LAW—LEASE IN VIOLATION OF—RIGHT OF LESSOR TO ATTACK ON GROUND OF ALIENAGE.—A lease of agricultural land for six years to an alien, ineligible to citizenship, cannot be avoided at the suit of the lessor on the ground that the lease is invalid under the alien land law of 1913 on account of the alienage of the lessee, but such issue of alienage can be raised only by the attorney-general on behalf of the state, in the manner provided by the act of 1913 (Stats. 1913, p. 206).

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin for Appellant.

A. H. Hewitt for Respondent.

FINCH, P. J.—Plaintiff was given judgment for the possession of certain agricultural land and the defendant appeals.

On January 25, 1917, the defendant executed and delivered to the plaintiff a lease of said land for a term of three years, commencing the first day of February, 1920, and ending the thirty-first day of January, 1923. On the same day the defendant executed and delivered to I. Murayama a lease of the same land for a term of three years, commencing on the first day of February, 1917, and ending on the thirty-first day of January, 1920. By separate answer and by proof offered at the trial the defendant sought to show that Suwa and Murayama are aliens, being subjects of the emperor of Japan; that prior to the execution of the two leases Murayama desired to acquire the land for a term of six years; that the defendant then informed Murayama that a lease for six years would be invalid under the alien land law of 1913; that thereupon it was agreed between them that the two leases should be executed, one to Murayama for a term of three years and the other to Suwa for three years after the termination of the first lease; that the two leases were executed and delivered pursuant to this understanding; and "that the two leases were made for the benefit of I. Murayama and I. Murayama alone, and for the purpose of avoiding" the restrictions of the alien land law. On motion of the plaintiff the separate answer was stricken out and his objection to the proof offered was sustained. Murayama held possession and farmed the land for the term of the first lease, paying the stipulated rental therefor. The defendant retook possession before the commencement of the term of the second lease and refused to deliver possession of the land to the plaintiff. Thereupon this action was instituted.

[1] The only question argued on appeal is whether a lease for six years to an alien, ineligible to citizenship, can be avoided at the suit of the lessor on the ground that the lease is invalid on account of the alienage of the lessee.

Section 2 of the alien land law (Stats. 1913, p. 206) provides that aliens ineligible to citizenship "may acquire, possess, enjoy and transfer real property, or any interest therein, in this state, in the manner and to the extent and for the purposes prescribed by any treaty now existing between the government of the United States and the nation or country of which such alien is a citizen or subject, and not otherwise, and may in addition thereto lease lands in this state for agricultural purposes for a term not exceeding three years." Section 6 provides: "Any leasehold or other interest in real property less than the fee, hereafter acquired in violation of the provisions of this act by any alien mentioned in section 2 of this act . . . shall escheat to the state of California. The attorney-general shall institute proceedings to have such escheat adjudged and enforced as provided in section 5 of this act." Section 5 provides that "the attorney-general shall institute proceedings to have the escheat of such real property adjudged and enforced in the manner provided by section 474 of the Political Code and title eight, part three of the Code of Civil Procedure."

The question presented is not new and the act of 1913 discloses no intention on the part of the legislature to provide any new rule for its determination. It has uniformly been held under statutes forbidding ownership of land by aliens that an alien grantee takes a defeasible estate, "free from attack by anyone except the government" in a direct proceeding. (*Ramires* v. *Kent, Bartel & Co.,* 2 Cal. 558; *Norris* v. *Hoyt,* 18 Cal. 217; *Ferguson* v. *Neville,* 61 Cal. 356; *Santa Paula Water Works* v. *Peralta,* 113 Cal. 38, [45 Pac. 168] ; *Doe* v. *Robertson,* 11 Wheat. 332, [6 L. Ed. 488, see, also, Rose's U. S. Notes] ; *Manuel* v. *Wulff,* 152 U. S. 505, [38 L. Ed. 532, 14 Sup. Ct. Rep. 651] ; *McKinley Creek Mining Co.* v. *Alaska United Mining Co.,* 183 U. S. 563, [46 L. Ed. 331, 32 Sup. Ct. Rep. 84] ; *In re Palmer Window Glass Co.,* 183 Fed. 902; *Johnson* v. *Elkins,* 1 App. D. C. 430; *Madden* v. *State,* 68 Kan. 658, [75 Pac. 1023] ; *Johnson* v. *Eversole Lumber Co.,* 144 N. C. 717, [57 S. E. 518] ; *Beldon* v. *Wilkinson,* 33 Misc. Rep. 659, [68 N. Y. Supp. 205] ; *Smith* v. *Smith,* 70 App. Div. 286, [74 N. Y. Supp. 967] ; *Stewart* v. *Gold & Copper Co.,* 29 Utah, 443, [110 Am. St. Rep.

719, 82 Pac. 475]; *Oregon Mortgage Co.* v. *Carstens*, 16 Wash. 165, [35 L. R. A. 841, 47 Pac. 421]; *Abrams* v. *State,* 45 Wash. 327, [122 Am. St. Rep. 914, 13 Ann. Cas. 527, 9 L. R. A. (N. S.) 186, 88 Pac. 327]; *State* v. *World Real Estate Commercial Co.,* 46 Wash. 104, [89 Pac. 471]; *Keene* v. *Zindorf,* 81 Wash. 152, [142 Pac. 484]; *Prentice* v. *How,* 84 Wash. 136, [146 Pac. 388].) The rule and the reason therefor are stated by the supreme court of the United States in *Doe* v. *Robertson, supra,* as follows: "That an alien can take by deed, and can hold until office found, must now be regarded as a positive rule of law, so well established that the reason of the rule is little more than a subject for the antiquary. It no doubt owes its present authority, if not its origin, to a regard to the peace of society, and a desire to protect the individual from arbitrary aggression." Where an owner has conveyed his title to an alien he becomes as much a stranger to that title as if he had never owned the property conveyed. To permit such a stranger to attack an owner's title on the ground of alienage would not promote "the peace of society" or "protect the individual from arbitrary aggression." If the alien grantee leases the land to another, he may collect the rent, and his alienage is no defense to an action therefor. (*Ramires* v. *Kent, Bartel & Co.,* 2 Cal. 558.) If he is out of possession, he may recover the same by appropriate action. (*Norris* v. *Hoyt,* 18 Cal. 217.) He may defend in court against adverse claimants. (*Ferguson* v. *Neville,* 61 Cal. 356; *Santa Paula Water Works* v. *Peralta,* 113 Cal. 38, [45 Pac. 168].) The constitution of the state of Washington provides that "all conveyances of lands hereafter made to any alien directly, or in trust for such alien, shall be void." (Wash. Const., art. II, sec. 33.) The courts of that state have uniformly held, as will appear from an examination of the cases cited, that an alien grantee takes a defeasible estate, void only as against the state.

There are cases holding that a court will not assist an alien to acquire title. In *Ales* v. *Epstein,* 283 Mo. 434, [222 S. W. 1012], the plaintiff, an alien, sought to enforce a constructive trust in land, alleging that the defendant had purchased the land in her behalf pursuant to an oral agreement that he would convey the same to her,

their relations being confidential, and the plaintiff being ready to pay but not having paid the purchase price. The court said: "If the plaintiff had received a deed to the real estate in controversy, conveying to her the absolute title to same, and these defendants were seeking to divest her of said title, then it might be well said that the state alone could attack the conveyance, declare a forfeiture, and take the property. If it was unlawful . . . for plaintiff, under the circumstances of this case, to take and hold the real estate aforesaid, it would be equally as unlawful for a court of equity to aid her in violating said law." To the same effect is the holding in *Case* v. *Kelly,* 133 U. S. 28, [33 L. Ed. 513, 10 Sup. Ct. Rep. 220, see, also, Rose's U. S. Notes]. No case, however, has been cited or discovered which holds that, after title has passed to an alien in violation of law, his defeasible estate can be attacked collaterally on the ground of his alienage; and all attacks are collateral except a direct proceeding by the government in the manner provided by law in the case of escheated estates.

From the foregoing authorities it seems clear that the issue of alienage, tendered by the separate answer, was not available to the defendant but can be raised only by the attorney-general on behalf of the state, in the manner provided by the act of 1913.

The judgment appealed from is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 24, 1921.

All the Justices concurred, except Shaw, J., who was absent.