[L. A. No. 9375. In Bank.—April 1, 1929.]

## HARUKO TAKEUCHI, Appellant, v. A. F. SCHMUCK et al., Respondents.

J. Marion Wright for Appellant.

Reay, Scharf & Reay for Respondents.

SEAWELL, J.—Plaintiff, a native-born American citizen of Japanese parentage, brought this action to recover the sum of $500 paid by her as a deposit on account of the purchase of real property in the city of Los Angeles for residence purposes, which purchase was never consummated, and also to recover the sum of $105, alleged to have been expended by her in payment of taxes on said property for the fiscal year 1923–1924, in accordance with her agreement with the seller.

The trial court denied recovery to plaintiff on the theory that plaintiff's father paid the amount of the deposit and taxes in the accomplishment of an illegal conspiracy between the father and daughter, a minor seventeen years of age, whereby legal title to the said property should be held by the daughter, but the entire beneficial interest vested in the father, an alien ineligible to citizenship, in violation of the provisions of the Alien Land Law. (Stats. 1923, p. 1020; *In re Akado*, 188 Cal. 739 [207 Pac. 245].) ▪ The court's finding that the father paid the deposit and taxes and that plaintiff and her father had conspired to violate the provisions of the Alien Land Law must be upheld. Section 9a of the act provides that a *prima facie* presumption that a conveyance of property, colorable in form, is made with intent to prevent, evade or avoid escheat shall arise upon proof of the taking of the property in the name of a person other than an alien ineligible to citizenship if the consideration is paid or agreed or understood to be paid by an alien ineligible to citizenship, and section 9c, that the enumeration of the presumptions set forth in section 9 shall not be so construed as to preclude other presumptions or inferences that reasonably may be made as to the existence of intent to prevent, evade or avoid escheat as provided for therein. ▪ We are of the view that although the

transfer is not actually consummated by a conveyance, a presumption of intent to evade the law arises where the transferee is eligible to own real property if the payment of the deposit on account of the purchase price is made by an ineligible alien, and the balance of said price is also to be paid by said ineligible alien. The validity of section 9, and its application in other actions than escheat proceedings brought by the state, was upheld in *People* v. *Cockrill*, 62 Cal. App. 22 [216 Pac. 78], affirmed by the supreme court of the United States in 268 U. S. 258 [69 L. Ed. 944, 45 Sup. Ct. Rep. 490]. ▇ The evidence relied upon by plaintiff as overcoming the presumption of illegality and proving that plaintiff was to be the beneficial owner of the property by virtue of a gift from her father may, in the circumstances of the situation, have been sufficient reason to arouse the suspicions of the trial judge. Such testimony, weighed down with inherent improbabilities, could not be held to be sufficient to compel a finding of lawful intent.

▇ With the court's conclusion that neither defendant A. F. Schmuck nor defendant Theresa A. Schmuck, his wife, were parties to the said conspiracy, we cannot concur. Schmuck testified upon cross-examination that he was dealing directly with the father and knew it was against the law for the father to buy the property; that the girl did not have the money; that he knew the title was being taken in the girl's name "to get around the law," and that plaintiff and her father were violating the law, but he did not know it was a violation of law for him to participate in an unlawful transaction. It is difficult to credit such a profession and he is precluded from protesting innocence by virtue of section 31 of the Penal Code, which provides that all persons concerned in the commission of a crime, whether they directly commit the act or aid and abet in its commission, are principals in any crime so committed. The rights of the parties must, therefore, be determined as between persons *in pari delicto*.

The terms of the contemplated purchase, as set forth in a deposit receipt dated November 21, 1923, and executed by the defendant in favor of plaintiff, were that the purchase price should be $14,350, plaintiff to pay $500 as a deposit, the receipt of which was acknowledged, and an additional $3,500 upon the transfer of title, and to execute

mortgages or deeds of trust for the balance, and pay taxes to July 1, 1924. The parties selected California Trust Company, a banking corporation, as an escrow-holder, and a check for $2,395, which was drawn by plaintiff's father, as were the checks with which the $500 deposit and taxes were paid, was deposited in the escrow. When the deal did not go through the bank returned a check payable to the joint order of plaintiff and her father for said sum of $2,395. Two small residences were located upon the property, and there was space for a third residence. Possession was never delivered to plaintiff or her father. According to plaintiff, the deal was not consummated because as a minor she was unable to make a valid contract or execute notes and mortgages in favor of the seller. Other testimony, however, indicates that neither plaintiff nor her father, as purchasers, nor defendants, as sellers, persisted in their efforts to effect a transfer because of the unwillingness of the bank as an escrow-holder and the title insurance company, which was to insure title to the property, to participate in a transaction which so strongly appeared to be tainted with illegality. Plaintiff testified that she asked for a return of the money soon after the transaction was abandoned. Defendant Schmuck denied any demand being made upon him until August, 1924, and testified that he told plaintiff at that time that he did not have the money.

It has long been a rule of law that courts will not compel parties to perform contracts which have for their object the performance of acts against sound public policy either by decreeing specific performance or awarding damages for breach. (*Pacific Wharf Co.* v. *Standard American Dredging Co.,* 184 Cal. 21 [192 Pac. 847]; *Howell* v. *City of Hamburg Co.,* 165 Cal. 172 [131 Pac. 130]; *Colby* v. *Title Ins. & Trust Co.,* 160 Cal. 632 [Ann. Cas. 1913A, 515, 35 L. R. A. (N. S.) 813, 117 Pac. 913]; *Union Collection Co.* v. *Buckman,* 150 Cal. 159 [119 Am. St. Rep. 164, 11 Ann. Cas. 609, 9 L. R. A. (N. S.) 568, 88 Pac. 708]; *Demartini* v. *Anderson,* 127 Cal. 33 [59 Pac. 207]; *Berka* v. *Woodward,* 125 Cal. 119 [73 Am. St. Rep. 31, 45 L. R. A. 420, 57 Pac. 777]; *Chateau* v. *Singla,* 114 Cal. 91 [55 Am. St. Rep. 63, 33 L. R. A. 750, 45 Pac. 1015].) This rule is not generally applied to secure justice between parties who have made an illegal contract, but from regard for a

higher interest—that of the public, whose welfare demands that certain transactions be discouraged. (*Pacific Wharf Co. v. Standard American Dredging Co., supra; Berka v. Woodward, supra.*) In the instant case the action is not based upon an affirmance of the illegal contract by seeking specific performance or damages for breach, but on an avoidance or rescission thereof, the object of plaintiff being to recover a deposit made and thus restore the *status quo.* ██ Nevertheless, the parties had conspired to effect a transfer in violation of the provisions of the act and by so doing had rendered themselves amenable to criminal prosecution. The cause of action arises from an illegal transaction. The gravity of the offense is indicated by the severity of the penalty attached, which is imprisonment in the county jail or state penitentiary not exceeding two years or a fine not exceeding $5,000, or both.

Since the first Alien Land Law was enacted in 1913 (Stats. 1913, p. 206) the law has been frequently amended by the legislature and by the people through the exercise of the initiative prerogative, with the object of increasing the difficulty of evasions and promoting more stringent enforcement. To this end transactions through which attempts were made to comply with the letter of the law, while violating its spirit and purpose, have been expressly inveighed against. To permit the recovery of the deposit paid in the case herein in furtherance of an attempt to evade the law would be to remove a deterrent to wrongdoing. "The principle applicable to relief in such cases is embodied in the two maxims, '*Ex pacto illicito non oritur actio,*' and '*Ex dolo malo non oritur actio,*' in the application of which the court must, upon plaintiff's own statement, deny him its aid in the pursuit of that which he has lost." (*Schmitt v. Gibson,* 12 Cal. App. 407 [107 Pac. 571].)

There is nothing inconsistent with the view herein expressed and the decision in *Suwa v. Johnson,* 54 Cal. App. 119 [203 Pac. 414]. In the instant case our decision is based upon the application of well-settled principles of the law of contracts which contemplate an illegal object. In *Suwa v. Johnson, supra,* a lessor retook possession of property leased by him to an alien ineligible to citizenship. A judgment that plaintiff, the ineligible alien, recover possession was affirmed by the district court of appeal on the

ground that a consummated transfer to an ineligible alien could be attacked only by the state in escheat proceedings. We do not understand said decision, or other decisions of similar import, as declaring the legality of contracts for transfer to ineligible aliens, or stating that in no action except escheat proceedings initiated by the state may the question of alienage be raised. (See *Case* v. *Kelly*, 133 U. S. 21 [33 L. Ed. 513, 10 Sup. Ct. Rep. 216, see, also, Rose's U. S. Notes], and *Ales* v. *Epstein*, 283 Mo. 434 [222 S. W. 1012].) Certainly, a contract having for its object the transfer of land in violation of the express provisions of an act which provides that conspiracies to violate its provisions are punishable by fine and imprisonment cannot be said to contemplate a lawful object. In the view we take of the matter, the principle that only the state can attack a consummated transfer is in line with the doctrine of the law of contracts that the courts will not afford relief to parties who have participated in an illegal transaction by permitting one party to recover from the other money or property transferred in violation of law.

It is with much hestitation that we have been brought to the point of holding that the law will not interfere to unloose the grasp of defendants upon the moneys involved in this appeal. While the law will not, upon grounds of public policy, afford relief to either party to an illegal transaction such as this one is shown to be, it is, nevertheless, proper to say that in the forum of good conscience the defendants are not justified in retaining possession of the money in suit. They were conspirators in an attempt to violate the statute in the same sense as were the Japanese father and daughter with whom they dealt, and their conduct, because of their citizenship, was more culpable than was the conduct of the ineligible alien or his daughter, who was of alien blood. The law, however, in this class of cases, provides no remedy for either of the offending parties.

The judgment is affirmed.

Richards, J., Shenk, J., Waste, C. J., Curtis, J., Preston, J., and Langdon, J., concurred.