[Sac. No. 4503. In Bank.—February 5, 1932.]

TARO SHIBA et al., Appellants, v. JAMES YEIKI CHI-KUDA, Respondent.

Busick & Leeper for Appellants.

Lee Gebhart and W. T. Tsukamoto for Respondent.

SEAWELL, J.—This appeal is taken from a judgment entered upon an order sustaining a demurrer to the complaint without leave to amend. Plaintiffs have made no request to file an amended complaint. Plaintiffs and defendant, we assume from their names, are of Japanese blood, but by the allegations of the complaint they were born in the United States, and are, therefore, entitled to all the privileges that a native-born citizen is entitled to enjoy. On February 17, 1930, as alleged, plaintiffs executed and delivered to defendant a deed to a portion of a certain described city lot situate within the city of Sacramento, this state. The consideration, $4,000, was paid by defendant to plaintiffs and the transfer was completed. It is next alleged as the crux of the cause of action and as grounds of rescission, that on May 6, 1930, "plaintiffs learned for the first time that defendant was not in fact the real purchaser of said property, but he bought said property for and on behalf of one Genkicki Akahoshi; that said Genkicki Akahoshi was and is a native of Japan and is ineligible to own and acquire real property in the state of California;

that defendant acquired the purchase price of said Genkicki Akahoshi and paid the same to plaintiffs; that defendant acted as a dummy in said matter for said Genkicki Akahoshi with the intent, purpose and design of evading the Alien Land Law of the state of California; that said Genkicki Akahoshi is now the real owner of said property and is in the possession, occupancy and use of the same, and the defendant owns the legal title to said property for said Genkicki Akahoshi.''

It is further alleged that the title to said city property was secured for the use and benefit of said Akahoshi, ineligible alien aforesaid, and that plaintiffs believed the representation of defendant that he was purchasing said property for his own use and benefit, and had they known said defendant was purchasing said property for the use and benefit of said Akahoshi with intent to evade said Alien Land Act, they would not have made the transfer. It is next alleged that plaintiffs upon the discovery of the above-recited facts gave notice of rescission to defendant and demanded of him a reconveyance of said real property, and offered to return the purchase price, but he refused to reconvey or accept the return of said purchase price. Akahoshi was not made a party to the action.

All of the material parts of the complaint have been set out *in haec verba* or stated in substance. It will be observed that the complaint not only fails to allege that the fractional part of the city lot conveyed to the defendant for the use and benefit of the ineligible alien was agricultural land, but it also fails to allege that it was not owned and occupied for the purposes expressly permitted by the treaty now existing between this country and the empire of Japan. In so far as said treaty is material to any question arising herein, it provides:

''The citizens or subjects of each of the High Contracting Parties shall have liberty to enter, travel and reside in the territories of the other to carry on trade, wholesale and retail, to own or lease and occupy houses, manufactories, warehouses and shops, to employ agents of their choice, to lease land for residential and commercial purposes, and generally to do anything incident to or necessary for trade upon the same terms as native citizens or subjects, submit-

ting themselves to the laws and regulations there established." (37 U. S. Stats. at Large, p. 1504.)

It appears upon the face of the complaint that the transfer sought to be annulled had been completed some three months before plaintiffs discovered the alleged conspiracy entered into between defendant and the alleged ineligible alien. Plaintiffs received the full value of said real property and passed the title of the same to a person eligible to own and occupy it. Plaintiffs suffered no special injury different or greater than that suffered by any other citizen of the state. A conspiracy which does not result in actual damages is not actionable. (*Herron* v. *Hughes,* 25 Cal. 556; *Bowman* v. *Wohlke,* 166 Cal. 121 [Ann. Cas. 1915B, 1011, 35 Pac. 37]; *Duncan* v. *Ramish,* 142 Cal. 686 [76 Pac. 661].) The offense was against the state, and not against any particular citizen. In such cases the state only may question the validity of a deed under the escheat provisions of the Alien Land Act, and impose such punishments as in said act prescribed. The complaint does not present a case of refusing to perform or complete a contract of sale upon the discovery of ineligibility of the grantee, or a conspiracy to violate the act. In such cases the innocent person may withdraw or refuse to complete the transaction. Plaintiffs are not aiding an ineligible alien to consummate an executory contract. Their part has ended. Here a transaction legal upon its face had long been fully consummated, whereupon plaintiffs, disavowing any criminal participation in the conspiracy, charge that one actually existed between their grantee and an ineligible third person for whom defendant purchased said real property. Plaintiffs having completed their transaction in terms satisfactory to themselves, have suffered no loss by the alleged intent of the defendant. The secret transaction, if any exists, to evade the Alien Land Act is the exclusive concern of the state. (*Mott* v. *Cline,* 200 Cal. 434 [253 Pac. 718]; *Suwa* v. *Johnson,* 54 Cal. App. 119 [203 Pac. 414].) Surely the plaintiffs, who have received the full value of their land and passed title to another who may be chargeable with acts which, if true, would work an escheat, cannot now come into the transaction and seize the property as their own, thereby usurping rights which inhere in sovereignty alone. The Alien Land Act directs the attorney-general to bring escheat-

ment proceedings in all cases for violations of its provisions. We think the proposition that plaintiffs cannot maintain this action as private individuals too clear to require further argument, and we have engaged in a discussion of it only to point out the grounds which sustain the order denying leave to amend. The complaint, if curable by amendment in the respect hereafter pointed out, is absolutely deficient as it stands in a material respect, in that it fails to allege that the uses for which the property is to be devoted are not uses which are expressly recognized by our treaty with Japan. Section 2 of the Alien Land Act provides that aliens may acquire, possess, enjoy and transfer real property in the manner and to the extent and for the purposes prescribed by any treaty now existing between the government and the nation of which such alien is a citizen or subject. It does not appear from the pleading that the actors were not within the privileges provided by the treaty.

Judgment affirmed.

Shenk, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.