[S. F. No. 13516. In Bank.—March 1, 1932.]

THE PEOPLE, Appellant, v. A. P. FUJITA et al., Respondents.

U. S. Webb, Attorney-General, Frank English, Deputy Attorney-General, Carl Barnard, District Attorney, and E. J. Dole, Assistant District Attorney, for Appellant.

Elliot & Calden, Albert H. Elliot, Guy C. Calden, Clarendon W. Anderson and Russell W. Cantrell for Respondents.

PRESTON, J.—The People of the state, acting through the attorney-general and pursuant to the direction of the grand jury of the county of Sonoma, bring this suit against the defendants to have it decreed that a small tract of agricultural land in said county, suitable for poultry raising, has escheated to the state pursuant to the provisions of the so-called Alien Land Law (Stats. 1920, p. lxxxiii), amended in 1923 (Stats. 1923, p. 1020), and later in 1927 (Stats. 1927, p. 880).

Defendant A. P. Fugita, whose real name is T. Fujita, is a Japanese, a subject of the empire of Japan, and thereby ineligible to citizenship in the United States and forbidden because of this fact to acquire, own, hold or occupy lands in the state of California. The other four defendants are native-born children of said defendant and his wife and are concededly citizens of the United States of America and entitled to all the privileges and immunities accompanying said citizenship. At the tme of the transaction here involved the oldest of said children was about fifteen years of age and the youngest about six years of age.

The facts are practically undisputed. On the fifteenth day of September, 1923, the defendant T. Fujita purchased from one Surhoff and wife the real property above referred to for a purchase price of $5,500 and caused the title to be placed in the names of said four children in joint tenancy, the purchase price being paid from the community funds of said defendant and his wife. When preparing to purchase said property, the said defendant, evidently acting under legal advice, delivered the purchase money to a trustee for the purpose of carrying out said transaction and in receipting for said sum the trustee defined his trust as follows:

"I have received the above sum with the express and distinct understanding that it has been delivered to me for the sole purpose of purchasing the above mentioned property for Katsumi Fujita, Eigie Fujita, Michi Fujita and Tomoe Fujita (United States Citizens) minor children of the said Tsuneji Fujita, all of whom were born in the State of California and are citizens of the United States; that it is the express intention of the said Tsuneji Fujita in donating said sum to make an absolute and irrevocable gift thereof to his said children and for the purpose of purchasing said property; furthermore, the said Tsuneji Fujita claims no interest whatsoever in said fund or the property to be purchased with it." To this declaration the alien assented *in toto.*

The deed, when executed by Surhoff, was duly filed for record. Following the passing of title and on September 24, 1923, the said defendant father duly applied for letters of guardianship over the estate of said children, specifying in the application their ownership of said property. This application was denied by virtue of the provisions of section 1751a of the Code of Civil Procedure which were held to forbid the appointment of an ineligible alien to guardianship. Following the denial of said application and on or about November 12th, the defendant father and family moved to the premises here in dispute, the father bringing with him a stock of poultry, the premises having been theretofore improved for the reception thereof. Admittedly the said father purchased the necessary supplies for the ranch, such as feed, lumber, etc., in his own name, sold the produce

of the place and received the checks and other returns in his own name for a period of time. Subsequently, however, the two older children began to take an interest in the property and themselves purchased from their own earnings certain supplies and materials used on the premises. However, annually from the time of the purchase of the property up to the time of trial of this action, pursuant to section 5 of said Alien Land Act as amended in 1923 (Stats. 1923, p. 1022), the father made detailed reports to the Secretary of State and to the county clerk of said Sonoma County, giving detailed information as to the finances connected with the property in all of which written reports the father disclaimed ownership of the property and asserted title to be in his said children.

The complaint and answer put in issue the question as to whether the transaction of defendant father was a mere subterfuge and fraud on the People of the state of California. The court, in 1928, under the facts as briefly narrated above, found "That it is not true that the said purchase of said property . . . is a mere subterfuge, or that it is a cover for the transaction of said defendant . . . or that it is a fraud upon the People of the State of California . . . '' Judgment accordingly was entered for the defendants and the People have appealed.

The citizenship of the grantees of said deed and their rights and immunities as such citizens are conceded by the People, thus placing them upon the exact footing of other citizens, having the right to hold or enjoy this or any other real property in the same way or manner as any other citizens. It is likewise conceded that minority is no handicap to the present ownership of the property, even though the minors be of tender years. It is undisputed also that recordation of the deed is sufficient delivery thereof and acceptance of title on the part of said minors. Nor is it disputed that an ineligible alien may make a gift of real or personal property to his children, who are citizens, and, if done in good faith, the title is unassailable. It is also conceded that such an alien may give funds to his children and they, in turn, if citizens, may with such funds purchase and own real property.

Nevertheless, the People contend that, notwithstanding the above concessions, the findings and judgment of the court

below are without support in the testimony and that the right of escheat exists as a matter of law upon the record in this case. Foundation for this charge is rested first upon section 853 of the Civil Code, which provides: ''When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.'' From this code section it is argued that defendant father is in fact the equitable owner of the property. But it has been expressly held that this section does not create any such presumption in a case identical in principle with the case before us (*Estate of Yano*, 188 Cal. 645 [206 Pac. 995]).

 Secondly, reliance is placed upon that portion of section 9 of the said act, as amended in 1923, which in so far as here applicable reads: '' . . . Every transfer of real property . . . though colorable in form, shall be void as to the state and the interest thereby conveyed or sought to be conveyed shall escheat to the state as of the date of such transfer, if the property interest involved is of such a character that an alien mentioned in section two hereof is inhibited from acquiring, possessing, enjoying, using, cultivating, occupying, transferring, transmitting, or inheriting it, and if the conveyance is made with intent to prevent, evade or avoid escheat as provided for herein. A *prima facie* presumption that the conveyance is made with such intent shall arise upon proof of any of the following group of facts: (a) The taking of the property in the name of a person other than the persons mentioned in section two hereof if the consideration is paid or agreed or understood to be paid by an alien mentioned in section two hereof . . .''

The meaning of this section, as applied to the facts of this case, is no more than this: That if the consideration for the purchase of the real property is paid by an ineligible alien and the title is taken in the name of a third person, it will be presumed, in the absence of other evidence to the contrary, that it was the intent of both the alien and the grantee to ''prevent, evade or avoid'' the escheat at law. The validity of this presumption was declared in *Takeuchi* v. *Schmuck*, 206 Cal. 782 [276 Pac. 345], also in *Cockrill* v. *California*, 268 U. S. 258 [69 L. Ed.

944, 45 Sup. Ct. Rep. 490]. But the presumption is recognized as disputable and as disappearing in the face of contrary evidence of sufficient strength to meet our rule on conflict of testimony. ▉ In the facts above recited and others of less importance not mentioned, there is to be found ample justification for the findings of the court below in this case. This is true notwithstanding the statement of the alien that he was prompted in part at least to make the gift because he was disqualified under the law to buy the property for himself. In *Estate of Yano, supra*, at page 650, it was said:

"The act of petitioner in securing conveyances of land to his daughter, while confessedly carried out because the laws of California did not permit him to buy it for himself, was in no sense unlawful since the daughter is a citizen of the United States and entitled to acquire and own real estate. There is nothing in the evidence to indicate that it was not the purpose of this conveyance to vest absolute title to the land in the minor." A question of law does not arise. The responsibility was with the trial court alone.

▉ In a supplemental brief appellant relies upon the language of the Alien Land Act which forbids an ineligible alien "to acquire, possess, enjoy, use, cultivate, occupy and transfer real property, or any interest therein, in this state, and have in whole or in part the beneficial use thereof". From this it is argued that inasmuch as the alien moved on to the land with his children and cultivated and managed it, he had the beneficial interest in it condemned by the above language of the act. If it be conceded that the alien caused a valid gift to be made to his children, who are citizens, their estate was not depleted by the mere occupancy of the father if it was in subordination to their claims and title. Speaking of a similar contention made in the Yano case, *supra*, the court, at pages 657, 658, said: "The appointment as guardian would not enable such parents to acquire, possess, or enjoy agricultural land, and therefore their ineligibility to such appointment could not prevent their so doing. A guardian neither acquires, possesses, or enjoys the property belonging to the ward, in any accurate or legal meaning of those terms. At most, he merely has, for some purposes, the control of the property,

but the control is not in his own right and does not inure to his benefit. . . . The use is in the child, not in the guardian.''

An extended review of the holdings of the courts of Washington state is contained in the briefs but we see no aid to this discussion by a consideration of them.

The judgment is affirmed.

Seawell, J., Langdon, J., Waste, C. J., and Curtis, J., concurred.