In re KUYE TAKANO.
No. 5983.

District Court, S. D. California, N. D.
Feb. 21, 1947.

80

Everett W. Mattoon, Deputy Atty. Gen. of the State of California, of Los Angeles, Cal., and Arthur H. Drew, Deputy Dist. Atty., for the County of Fresno, State of California, of Fresno, Cal., for State of California.

Kellas, Lamberson & Thomas, of Fresno, Cal., for petitioner.

MATHES, District Judge.

In 1942 the debtor, Kuye Takano, an American-born Japanese, filed a petition under § 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, seeking a composition or an extension of time within which to pay her debts. The petition was approved and the matter referred to a Conciliation Commissioner.

Certain real property located in Fresno County, California, is listed as the debtor's chief asset. Exempt property valued at $815, and "horses, cows and other animals" valued at $165, complete the asset schedule.

Debts and claims were estimated as amounting to $8,700. The real property,

listed at $15,000, secures $6,000 of this total indebtedness. The remainder of $2,700 is unsecured, and is claimed to be owing on open book account for labor performed by three Japanese persons within 5 to 10 years next prior to filing of the petition.

At a meeting of creditors called by the Conciliation Commissioner an offer of composition was refused. Thereupon debtor petitioned to be adjudicated under § 75, sub. s, 11 U.S.C.A. § 203, sub. s. On October 28, 1942 the petition was granted, and the debtor adjudicated a bankrupt. The record does not show what offer of composition was made, nor what proportion of the creditors refused to accept the offer.

Noting that debtor's non-exempt assets are valued at almost double the amount of all claimed liabilities, that the unsecured indebtedness is comprised of labor claims which are unusually stale, that agricultural pursuits have fared financially well since prior to 1942, it is difficult to allay incipient misgivings as to the presence in these proceedings of the good faith required by § 75, sub. i, 11 U.S.C.A. § 203, sub. i, even though no such question has been raised. Cf. In re Moser, 9 Cir., 1938, 95 F.2d 944, 945. The requirement of good faith is a constant condition precedent to confirmation of a proposal for composition or extension and "hits at secret advantages to favored creditors or other improper or fraudulent conduct." John Hancock Ins. Co. v. Bartels, 1939, 308 U.S. 180, 185, 60 S.Ct. 221, 223, 84 L.Ed. 176.

On November 30, 1945 the State of California filed an action in the Superior Court of the State of California, in and for the County of Fresno, for the purpose of declaring an escheat of debtor's real property under the provisions of the Alien Property Initiative Act of 1920. Deering's Gen.Laws of California, Act 261. On February 9, 1946 the Conciliation Commissioner, upon petition of the debtor, enjoined further proceedings in the state court.

The State thereupon moved to rescind the order of February 9. The Conciliation Commissioner on April 16, 1946 entered an order denying this motion and di-

recting the State to file within 30 days a statement of claim to the real property or be thereafter debarred from asserting any claim. The State now petitions to review the order of April 16.

California's Alien Property Initiative Act of 1920 determines the eligibility of aliens to own California real property or any interest therein. Section 1 of the Act grants to aliens eligible to citizenship under the laws of the United States the same rights of ownership as are accorded to citizens of the United States. Other aliens are declared ineligible to own real property in California, except as provided by treaty between the United States and the nation or country of which such alien is a citizen or subject.

Section 7 of the Act provides that: "Any real property hereafter acquired in fee in violation of the provisions of this act * * * shall escheat as of the date of such acquiring, to, and become and remain the property of the state of California. The attorney general or district attorney of the proper county shall institute proceedings to have the escheat of such real property adjudged and enforced * * *. Upon the entry of final judgment in such proceedings, the title to such real property shall pass to the state of California, as of the date of such acquisition in violation of the provisions of this act." Similar provisions as to escheat of a leasehold or other interest in realty are contained in § 8 of the Act.

Conveyances to prevent escheat are dealt with in § 9: "Every transfer of real property, or of an interest therein, though colorable in form, shall be void as to the state and the interest thereby conveyed as sought to be conveyed shall escheat to the state as of the date of such transfer, if the property interest involved is of such a character that an alien mentioned in section two hereof is inhibited from acquiring, possessing, enjoying, using, cultivating, occupying, transferring, transmitting or inheriting it, and if the conveyance is made with intent to prevent, evade or avoid escheat as provided for herein."

The Alien Property Act of 1913, which was superseded by the 1920 Act, specified that title did not pass to the state until entry of final judgment in escheat proceedings. Deering's Gen.Laws of California, Act 260, § 5. The 1920 Act provides that upon entry of final judgment title passes to the state as of the date of acquisition in violation of the Act. Deering's Gen.Laws of California, Act 261, § 7. Thus the present Act provides for judicial declaration of a retroactive escheat.

■ It has long been established that only the state can challenge the title of an alien; that until entry of final judgment in the escheat proceedings, the alien is considered as having a defeasible estate free from attack other than by direct proceeding of the state. Ramires v. Kent, Bartell & Co., 1852, 2 Cal. 558; Norris v. Hoyt, 1861, 18 Cal. 217; Merle v. Mathews, 1864, 26 Cal. 455; Suwa v. Johnson, 1921, 54 Cal.App. 119, 203 P. 414.

Decisions under the 1920 Act have followed the earlier cases. In re Yano's Estate, 1922, 188 Cal. 645, 206 P. 995, 998; Mott v. Cline, 1927, 200 Cal. 434, 253 P. 718; cf. In re Griswold's Estate, 1935, 11 Cal.App.2d 89, 53 P.2d 192.

Section 70 of the Bankruptcy Act provides that in ordinary bankruptcy proceedings the bankrupt's title vests in the trustee in bankruptcy as of the date of filing of the petition. 11 U.S.C.A. § 110. In proceedings under § 75, however, there is no provision for vesting title. Sub-section n provides only that filing of the petition "shall immediately subject the farmer and all his property, wherever located, for all of the purposes of this section, to the exclusive jurisdiction of the court * * *." 11 U.S.C.A. § 203, sub. n. Section 75, sub. s, provides that following adjudication "the court shall stay all judicial * * * proceedings in any court * * * against the debtor or any of his property, for a period of three years"; and that during the three years "the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court, provided he pays a reasonable rental * * *."

■ Title to real property being governed by the law of the state where situated, and California law declaring as it does

that title to escheated property vests in the state as of the date of unlawful acquisition, judgment of the state court that the land in question should escheat would amount to a holding that title was in the state and not the debtor when the petition was filed. The escheat thus would operate to deprive the bankruptcy court of jurisdiction over the property. Cf. Wright v. Union Central Life Ins. Co., 1938, 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490; Bastian v. Erickson, 10 Cir., 1940, 114 F.2d 338; In re Kofoed, D.C.E.D.Wash., 1942, 46 F.Supp. 118; In re Boehme, D.C.Mont., 1941, 41 F.Supp. 426.

Until final judgment of escheat, however, the property would remain under the jurisdiction of this court. Cf. In re Baldwin, 1934, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020. Furthermore, the fact that the property was in the actual or constructive possession of the *debtor at the time* of filing of the petition, establishes the power of the bankruptcy court to hear and determine all controversies concerning title, and to enjoin all interference with the exercise of such jurisdiction. Mangus v. Miller, 1942, 317 U.S. 178, 63 S.Ct. 182, 87 L.Ed. 169; Kalb v. Feuerstein, 1940, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370; cf. Isaacs v. Hobbs Tie & Timber Co., 1931, 282 U.S. 734, 737, 738, 51 S.Ct. 270, 75 L. Ed. 645. In the circumstances, then, should the escheat proceedings in the state court be permitted to proceed to judgment?

A similar question was presented in State of Texas v. Donoghue, 1937, 302 U.S. 284, 58 S.Ct. 192, 82 L.Ed. 264. There the State of Texas sought the bankruptcy court's permission to institute proceedings in the state court for confiscation of certain oil held by the trustee but claimed by the State as "unlawful oil" because produced or transported in violation of state conservation measures. The Texas statute prorated the production of crude oil and prohibited the purchase, transportation or handling of oil produced in excess of the amount allowed. The statute also provided for court action to declare a forfeiture to the state of oil unlawfully produced or transported.

Permission to proceed in the state court was withheld, and the Circuit Court of Appeals sustained the ruling. State of Texas v. Donoghue, 5 Cir., 1937, 88 F.2d 48. The Supreme Court reversed, holding that the "bankruptcy court abused its discretion in denying the State's application for permission to institute proceedings in the state court * * *." State of Texas v. Donoghue, supra, 302 U.S. at page 289, 58 S. Ct. at page 195, 82 L.Ed. 264.

The position of Texas was that the oil became state property when produced or transported contrary to law; that the state was not seeking to establish a right to forfeiture, but only to enforce a forfeiture that had occurred prior to filing of the debtor's petition. The Supreme Court held that possession or control of the oil was not a requisite to state-court jurisdiction to entertain the forfeiture suit, and that retention of the oil by the trustee in bankruptcy was not inconsistent with the maintenance of the state-court suit. Id., 302 U. S. at pages 288, 289, 58 S.Ct. 192, 82 L.Ed. 264.

Similarly, in the proceedings at bar, it is the position of California that title to the real property escheated to the State when unlawfully conveyed; that therefore the State is not seeking merely to establish the right to escheat the property, but to enforce the escheat as *fait accompli* which occurred prior to filing of the debtor's petition. Thus possession or control of the real property is not a requisite to state-court jurisdiction to entertain the escheat proceedings; nor is retention of the property by the debtor under the control and supervision of the bankruptcy court inconsistent with maintenance of the state-court suit.

In State of Texas v. Donoghue, the Supreme Court reasoned that forfeiture of unlawful oil was a penalty imposed to vindicate the Texas policy of conservation, and that the bankruptcy court was "without power to enforce penalties imposed by the State for violation of its laws." Id., 302 U.S. at page 288, 58 S.Ct. at page 195, 82 L.Ed. 264. By the same token, escheat under the Alien Land Law is a penalty imposed to enforce California's land policy, and the bankruptcy court lacks the power to enforce an escheat.

The Conciliation Commissioner was of the opinion that State of Texas v. Donoghue held only that a bankruptcy court is without power to enforce the penal laws of a state, and is not applicable at bar because an escheat action under the California Alien Land Law is a civil and not a criminal proceeding. People v. Nakamura, 1932, 125 Cal.App. 268, 13 P.2d 805. Classification of an escheat action as a civil proceeding does not alter the fact that such a taking of real property by the state is a penalty imposed to vindicate the state's land policy.

Moreover, even if this court does possess the power to declare an escheat under alien land laws, the advisability of exercising jurisdiction in proceedings of that nature is to be seriously questioned. As my learned predecessor, the late Judge Jenney once observed "* * * in the Isaacs v. Hobbs Tie & Timber Co., [1931, 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645] and the Baldwin cases [Ex parte Baldwin, 1934, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020] the Supreme Court indicated that, while the bankruptcy court has exclusive jurisdiction to control the administration of the bankrupt estate, it had the right, in the exercise of its discretion, to permit a state court to try title to property in the actual or constructive possession of the bankruptcy court." In re American Fidelity Corporation, D.C.S.D.Cal.1939, 28 F.Supp. 462, 469.

The Supreme Court has since said: "A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to State courts of particular controversies involving unsettled questions of State property law and arising in the course of bankruptcy administration." Thompson v. Magnolia Petroleum Co., 1940, 309 U.S. 478, 483, 60 S. Ct. 628, 630, 84 L.Ed. 876.

The purpose of § 75 is to provide the farmer-debtor with opportunity for financial rehabilitation by permitting him to retain possession of his property and work his farm for three years free from harassment by creditors. But it seems clear that Congress never intended such protection to enable land to be held in contravention of a state's land policy. And it seems equally clear that decision as to whether land is so held should properly be left to the state courts. Mangus v. Miller, supra, 317 U.S. at page 185, 63 S.Ct. 182, 87 L.Ed. 169; In re Bailey, D.C.E.D. N.Y.1907, 156 F. 691.

It was the view of the Conciliation Commissioner that to permit the escheat proceedings to proceed to judgment in the state court would be an abandonment of jurisdiction by the bankruptcy court. Of course this court should never abandon jurisdiction when to do so would defeat or impede the purposes of the Bankruptcy Act. However, the state court proceedings involved here cannot affect the jurisdiction of this court unless an escheat is enforced. In which event this court will recognize the State's adjudication that the debtor did not have title at the time she filed her petition here.

The motion of the State to strike the real property from the debtor's schedule of assets was premature and should be granted only if an escheat is declared by final judgment of the state court.

The Conciliation Commissioner's order dated April 16, 1946 is reversed and set aside, and the matter is remanded with instructions to enter an order granting the motion of the State of California to vacate the Commissioner's order of February 9, 1946 enjoining further escheat proceedings in the state court.